## 24337. CITY OF ATLANTA v. WISE.

DECIDED OCTOBER 4, 1935.

J. L. Mayson, C. S. Winn, J. C. Savage, for plaintiff in error.
Hewlett & Dennis, T. Felton Bowden, contra.

STEPHENS, J. E. M. Wise instituted suit against the City of Atlanta, to recover damages for an alleged breach of a contract of sale by the city to him of sludge which had accumulated at certain of the city's disposal plants, and which would accumulate at these plants during a period of one year, and which Wise agreed to remove. The alleged breach consisted in a cancellation of the contract by the city before its termination, by refusing to permit the plaintiff to further remove any accumulations of sludge. He laid his damage at $27,910.28, this sum being based on the alleged difference between the 50 cents purchase-price in the beds, the cost of removing and preparing the sludge for market, and the market value of the tonnage on hand, and the reasonable expectancy of the plants for the remainder of the contract period. Upon the close of the evidence adduced by the plaintiff at the trial, the defendant moved for a nonsuit. This motion was overruled, and after further introduction of evidence a verdict for the plaintiff in the sum of $1500 was rendered. To the overruling of the motion for nonsuit, and of the motion for new trial, the defendant excepted.

The evidence was as follows: The contract was executed on August 1, 1930. By its terms Wise was granted, for a period of one year from the date of the contract, the privilege to enter upon the property of the city at the city's disposal plants named, and "remove therefrom the product accumulated thereat known as sludge," for which Wise agreed "to pay for said sludge, so removed, at the rate of 50 cents per ton." Wise agreed, "during the term of this contract, to remove the sludge now at said plants *at once,* and to remove sludge which accumulates during the term of this contract *as fast* as same accumulates at said plants, to the extent that there shall not be an overflow of the beds at any time." Wise was permitted by the contract to put up drying sheds on the city's property, and to have the privilege of removing them at the termination of the contract. It was agreed that the city reserved the right to use 50 tons of sludge from each of two of the three disposal plants. There were three disposal plants—the Peachtree

Creek plant, the Proctor Creek plant, and the Entrenchment Creek plant. In a letter mailed to Wise on February 26, 1931, the chief of construction of the city stated that the sewer committee had authorized him to write in regard to the contract for the removal of the sludge from the city's disposal plants, and that, due to the large accumulation of sludge at two of the disposal plants, it was necessary that the sludge be removed as early as possible, and that the committee had given Wise 10 days from the date of the letter to remove whatever sludge Wise had ready for removal, and that if Wise had "commenced no action within ten days," the contract with the city would be "canceled." On April 6, 1931, by resolution of the mayor and general council of the city, the contract with Wise was canceled upon the ground that Wise, by allowing the sludge to accumulate, had "failed to carry out his agreement," and that it was urgently necessary that the sludge be removed, and it could be removed by the city to be used in the parks and at the dairy farm. Wise in his testimony denied that he had ever received this letter. He testified that he had been informed that the city had canceled the contract, that he went to the city clerk's office and ascertained for the first time that the contract had been canceled on April 6, 1931. Wise discontinued the removal of any of the sludge about April 14, 1931. The city then took charge of the situation and removed the sludge.

The three plants together produce about 10,000 tons a year. Wise's estimate was 425 tons per month. One witness testified that Wise actually removed from the Proctor Creek plant, in the eight months he had the contract, an amount which would be the production for about three days. Wise stated it was 20 tons. This evidence was uncontradicted. Wise took many tons out of the beds, which he piled up; but the evidence shows without conflict that it was his policy to remove it from the premises only as he sold it, and that he sold very little. He paid the city only for the quantity he actually sold. He stated that he took from the Peachtree beds 2342 tons and stored it on the city's property, but his estimate of the quantity actually removed from the city's premises showed that it was a comparatively small amount. His own estimate was 120 to 130 tons. His uncle, W. W. Wise, estimated that he removed about 400 tons. As to the exact amount of sludge on hand at the date of the contract the evidence is not clear, but Wise's

own statement with reference to the Peachtree plant alone is that he took out and stored on the city's property 2342.2 tons and that there were 2232.45 tons in the beds at this plant when the city notified him to quit. This made a total of 4574.65 tons at Peachtree alone, which he was obligated to remove. He stated that at Proctor and Entrenchment he took out of the beds about 876.5 tons, and that when the contract was canceled there were in the beds at these plants 1918.62 tons. The tonnage on hand on August 1, 1930, the date of the execution of the contract, was to be removed "at once." Wise stated generally that all during his operations there were some empty beds at the three plants into which the city could "draw." At the time of cancellation in April there were on the city's properties large quantities of sludge which were on the same properties when the contract was made the preceding August. The sludge had been accumulating all during those months.

While Wise, in his testimony, denied receipt of the notice from the city of its intention to cancel the contract if he did not commence removing the sludge within ten days, there was no insistence that there had been any departure from the strict terms of the contract (which required Wise to remove the sludge at once) by the city's failure for several months to insist upon a strict compliance by him with his obligation to remove the sludge, and that the city could not declare a forfeiture of Wise's rights under his contract without first notifying him and giving him an opportunity to carry out his obligation under the contract by proceeding immediately to remove the sludge. The case was tried and submitted to a jury by the charge of the court upon the theory whether Wise had complied with his obligations under the contract, and the city had without excuse terminated the contract before its expiration. It is therefore immaterial whether Wise ever received this letter from the chief of construction of the city. A breach of a contract in a manner so substantial and fundamental as to defeat the object of the contract authorizes a rescission by the opposite party. *Sinclair Refining Co.* v. *Davis*, 47 *Ga. App.* 601 (171 S. E. 150) ; 13 C. J. 613, and cit. The question is, did Wise's failure to remove the sludge from the premises of the city amount to a breach of the contract in its entirety and in a manner so substantial and fundamental as to defeat the entire contract? In determining this ques-

tion it is necessary to consider the nature of the contract, including its purposes and objects. The main object of the contract was the removal of the sludge from the city's premises. The contract being one for the sale of the sludge to Wise in consideration of his payment of money to the city, it was necessarily contemplated that the sludge should be removed from the city's premises. In the contract the city granted to Wise the privilege to enter upon its *property* at the disposal plants "and *remove* therefrom" the product accumulated thereat known as sludge. The property is the property upon which the disposal plants are located. The contract contemplates that Wise is to remove the sludge from the property of the city on which the disposal plants are located. The provision in the contract that the sludge accumulating during the term of the contract shall be "removed" as fast as it accumulates, "to the extent that there shall not be an overflow of the beds at any time," does not limit or confine Wise's obligation to the removal of the sludge merely from the beds. It has reference to the removal of the sludge from the premises, and to the manner only in which the sludge is to be removed and taken from the premises. Wise is to remove the sludge from the *premises,* and in so doing, he must remove it in such a manner that there shall not be an overflow of the beds at any time. Clearly, then, the contract provided that Wise should remove the sludge from the defendant's premises. The sludge which had already accumulated upon the premises at the time of the execution of the contract was, by its express terms, to be removed *"at once,"* while that which accumulated during the term of the contract should be removed from the premises *as fast* as it accumulated, and removed in such a manner that there should not be an overflow of the beds at any time. It therefore follows that the failure of Wise to remove, not only at once, but for a period of over eight months, the sludge which had accumulated on the defendant's premises at the time of the execution of the contract and the sludge which had accumulated afterwards, notwithstanding he may have removed a small part of it (about 500 tons by him and his uncle), constituted a breach of the contract in a manner which went to the entire contract and which was so substantial and fundamental as to defeat the objects and purposes of the contract. This breach was therefore sufficient to justify the city in canceling the contract.

The provision in the contract that the sludge which had accumulated should be removed at once, and that the sludge to accumulate afterwards should be removed as fast as it should accumulate, "to the extent that there shall not be an overflow of the beds at any time" certainly called for the removal of the sludge from the premises immediately after its accumulation, in so far as this was physically possible, and within such time as it could be reasonably accomplished. Where the contract provided that the accumulated sludge should be removed "at once," it was certainly within the intention of the parties, at the time of the execution of the contract, that "at once" meant a period of time far shorter than 8-1/2 months. It is clear that as these plants were producing around 525 tons a month, as Wise estimated the capacity of the plants, with some thousands of tons on hand at the beginning of the contract, the removal from the city's properties of a maximum of approximately 500 tons in 8-1/2 months was not such a removal of the accumulation and production as was called for by the contract. This is true, giving Wise the fullest possible benefit from his own testimony and that of his witnesses as to the tonnage taken from the beds and piled upon the city's property, and the number of vacant beds existing in April, 1931. Wise appears to have based his case on the proposition that so long as there were any empty beds, into which the city could "draw," at all the plants, he had discharged his obligations, no matter how great the quantity piled up and awaiting removal from the properties. With this we can not agree. This court of course is not now discussing or considering the conflicting evidence as to how many beds were vacant in April, 1931, or whether they were then vacant. The whole evidence is being considered in the light most favorable to Wise.

In view of what has been said, it is unnecessary to pass upon the special grounds of the motion for a new trial, which, where not amplifications of the general grounds, consist in exceptions to rulings upon testimony respecting the value of the sludge in the beds and to the number and condition of the beds into which the sludge was drawn, etc. The verdict for the plaintiff was unauthorized, and the court erred in overruling the motion for a new trial.

*Judgment reversed. Sutton, J., concurs. Jenkins, P. J., disqualified.*