70017. MAYOR & CITY OF DOUGLASVILLE v. HILDEBRAND.
(333 SE2d 674)

BEASLEY, Judge.

This appeal involves an action for breach of contract brought

against the Mayor and City of Douglasville. On August 20, 1981, plaintiff and the city entered into a written agreement whereby the plaintiff agreed to serve as Community Development Project Engineer for a period of three years at an "annual fee" of $19,000. The contract provided that the "annual fee" could be changed by the parties without affecting the other terms. The contract contained three provisions for its termination. The only one which has any application to the circumstances of this case reads: "Either party may terminate this agreement at any time by giving notice in writing to the other party at least ninety (90) days prior to the date said party intends to terminate this agreement." The services and duties plaintiff was to perform for the city were listed under sixteen designated subparagraphs.

The plaintiff worked for the city under the contract for over two years and received two 10% increases of his annual fee so that it became $1,915.83 per month. On September 20, 1983, the city sent a letter to plaintiff: "You are hereby notified that, because of certain material breaches by you of the referenced agreement [of August 20, 1981], your services thereunder are no longer desired, effective upon your receipt of this notice."

By suit, Hildebrand sought damages for loss of his annual fee and for loss in stock which he contended he was forced to sell.[1] After the city answered, plaintiff moved for summary judgment based on the terms of the contract and his affidavit which recited that his monthly salary was $1,915.83 and that he was entitled to $5,747.49 because of the city's failure to give him ninety days notice prior to the termination of the contract. The city offered an affidavit by plaintiff's supervisor, the Director of Community Development, that plaintiff did not perform all the services enumerated in the contract. One example the affiant gave was that plaintiff did not attend the necessary meetings even though "I personally requested that he do so." The other example was that plaintiff "rarely, if ever, kept me knowledgeable of his whereabouts and how he could be contacted. . . ." The affidavit made reference to plaintiff's "continued failure to comply with the terms and conditions of the contract" and that affiant "personally spoke" with plaintiff "regarding his continuous failure to perform his duties. . . ."

The two contractual provisions as to which there was alleged noncompliance are: 1) a portion of paragraph 7 which recites that plaintiff "agrees that he will at all times keep the Community Development Director knowledgeable of his whereabouts and how he may

---

[1] This issue as to a stock loss was eliminated by the trial court and is not before this court.

be contacted," and 2) subparagraph 2 (p) which required that plaintiff attend "necessary meetings, etc., if requested, which may relate to the program. . . ."

After a hearing, the trial court found that the plaintiff should have been given ninety days notice prior to termination of the contract and thus was entitled to damages equalling compensation for ninety days under the contract. Summary judgment was granted to plaintiff and judgment entered in the amount of $5,747.49 plus interest and costs. The defendant appealed.

1. The city argues that the termination provisions applied only to a "no just cause" termination and would not prevent the city's rescission or more properly termination,[2] of the contract for the plaintiff's breach thereof.

Assuming the city could repudiate the contract without giving ninety days notice, the requirement for such termination must be based on a material breach, a substantial failure to perform. A breach which is "incidental and subordinate to the main purpose of the contract, and which may be compensated in damages, does not warrant a rescission . . ." or termination nor does "a mere breach of contract not so substantial and fundamental as to defeat the object of the parties in making the agreement." In order to trigger the right to rescission, "the act failed to be performed must go to the root of the contract. . . ." 17 AmJur2d 983, Contracts, § 504.

Our courts have followed these basic principles. In *Sinclair Refining Co. v. Davis*, 47 Ga. App. 601 (1) (171 SE 150) (1933), this court held: "A breach of a contract as to a matter so substantial and fundamental as to defeat the object of the contract may authorize a rescission of the contract by the opposite party." Accord *City of Atlanta v. Wise*, 51 Ga. App. 941, 944 (181 SE 882) (1935); *Martin v. Rollins, Inc.*, 138 Ga. App. 649, 651 (226 SE2d 771) (1976).

Here there were broad conclusions in the affidavit for the city as to plaintiff's "continuous failure to comply" with the contractual terms. Since mere legal conclusions and allegations present no issue of fact on motion for summary judgment, *Benefield v. Malone*, 112 Ga. App. 408 (2) (145 SE2d 732) (1965), we need consider only the two

---

[2] While one party to a contract may rescind the contract for nonperformance by the other party to a contract, such rescission is technically the proper remedy "only when both parties can be restored to the condition in which they were before the contract was made." OCGA § 13-4-62. Thus, although the terms "rescind" and "rescission" are often used, the more accurate terms where the contract has been substantially carried out or is ongoing are "abrogation," "termination," "repudiation" or "renunciation." Where there is a wrongful repudiation or renunciation by one party to a contract, the other party is discharged from his duties and may enforce his remedial rights to damages. 17 AmJur2d 906, 979 & 985, Contracts, §§ 446, 503 and 505. Plaintiff seeks to do just that and the question here concerns whether there was a wrongful termination by the city.

specific charges involving plaintiff's alleged noncompliance. Neither alone nor collectively do either rise to the level necessary to warrant termination, i.e., constituting noncompliance, so substantial and fundamental as to defeat the contract's object. That being true, the city was obliged to give plaintiff the ninety-day notice of termination to which it had agreed in the contract.

2. Because our ruling disposes of the case without reference to plaintiff's affidavit filed on the day of the hearing we need not consider the propriety of that action.

3. A wrongful discharge in violation of a contract right to continued employment gives an employee the right to recover damages. Even though there is a repudiation of the promise of future earnings, the injured party is not necessarily entitled to the sum for the complete contract term. 22 AmJur2d 104, Damages, § 70. "Where a contract of employment expressly empowers an employer to terminate the contract upon giving notice, recovery for wrongful breach is limited to the notice period." *Odell v. Humble Oil &c. Co.*, 201 F2d 123, 128 (10th Cir. 1953). Here plaintiff is limited to 90 days, to his actual contractual loss, as a measure of liquidated damages.

The amount claimed in this regard is not challenged by a counter affidavit. Consequently, there are no issues remaining, as the trial court struck the damages claimed for loss of stock and appellee did not cross-appeal.

*Judgment affirmed. Deen, P. J., concurs. Pope, J., concurs specially.*

POPE, Judge, concurring specially.

In my view, appellee's failure to comply with the contract provisions requiring (1) that he keep the Community Development Director knowledgeable of his whereabouts and (2) that he attend necessary meetings would constitute material breaches of the contract. Proof of same would authorize the City to terminate the contract without incurring any liability to appellee under the ninety-day notice provision. However, in response to appellee's prima facie case, the City offers nothing more than vague and conclusory allegations of appellee's alleged contract noncompliance, rather than specific adverse facts. See *Hyman v. Horwitz*, 148 Ga. App. 647, 649 (252 SE2d 74) (1979). Under these circumstances, the trial court properly granted appellee's motion for summary judgment.

DECIDED JULY 11, 1985.

*Robert A. Kunz, James H. Lewis*, for appellant.

*Alice D. Bonner*, for appellee.