A00A2076. LAGER'S, LLC v. PALACE LAUNDRY, INC.
(543 SE2d 773)

MIKELL, Judge.

Plaintiff Palace Laundry, Inc. d/b/a Linens of the Week ("Linens") brought a breach of contract and open account action against defendant Lager's, LLC ("Lager"). On summary judgment, Linens argued that as a matter of law, it was entitled to recover liquidated damages, damages on an open account, and attorney fees, as a result of Lager's premature termination of the contract. The trial court agreed. Lager appeals. For reasons fully stated below, we affirm the trial court's grant of summary judgment to Linens as to Lager's breach of contract, but reverse as to Linens' remaining claims and remand the case for a trial on damages.

"In reviewing a grant or denial of summary judgment, this Court conducts a de novo review of the evidence."[1] To prevail at summary

---

[1] (Citation and punctuation omitted.) *Carter v. Tokai Financial Svcs.*, 231 Ga. App. 755 (500 SE2d 638) (1998).

judgment under OCGA § 9-11-56 (c), the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmovant, warrant judgment as a matter of law.[2]

Viewed most favorably to Lager, the evidence shows that Linens is in the business of renting and laundering linens, uniforms, and other related goods. On December 8, 1997, Lager, owner of Max Lager's American Grill & Brewery, entered a three-year contract with Linens to utilize its services for Lager's restaurant. The cost to Lager for each delivery depended upon the number and the type of items ordered.

Linens made its first delivery to Lager on March 2, 1998, in preparation for Lager's opening three days later. After several weeks of deliveries, Lager terminated the contract. In its letter dated June 29, 1998, Lager stated, "This is our 30-day notice of cancellation of linen service. . . . We have not been happy with delivery dependability, quality of the linen, the originally agreed upon prices . . . , and the infrequency of the soiled linens to be picked up." Linens made its last delivery to Lager on August 10, 1998.

Linens filed this lawsuit on September 21, 1998. Lager filed its answer and counterclaim alleging that Linens deliberately overcharged Lager and falsified accounts. Linens moved for summary judgment on the grounds that Lager's premature termination triggered the liquidated damages provision. Linens also sought judgment on an open account. The trial court agreed and entered judgment against Lager for $33,117 in liquidated damages, $8,818.11 on an open account, attorney fees equal to 15 percent of the sum total of both amounts, and pre-judgment interest.

1. Lager argues that genuine issues of fact exist as to whether its cancellation of the contract was excused by Linens' alleged deficient service. Lager's argument is without merit.

The Supreme Court of Georgia has stated, "The court will take the contract by its four corners, and determine its meaning from its language, and, having ascertained from the arrangement of its words what its meaning is, will construe it accordingly."[3] Further, "[i]f the language of a contract is clear and unambiguous, the terms of the agreement are controlling and an appellate court should look no further to determine the intention of the parties."[4] Finally, the general rule in determining contract compliance is substantial compliance,

---

[2] Id.

[3] (Citation and punctuation omitted.) *Terry v. State Farm Fire &c. Ins. Co.*, 269 Ga. 777, 779 (504 SE2d 194) (1998).

[4] Id. at 778-779.

not strict compliance.[5] It is with these mandates from our Supreme Court that we examine the terms of the contract.

As to Linens' deficient performance, the contract provides:

> 13. *Deficiencies in Service.* The Customer expressly waives the right to terminate this agreement during the term hereof or any extensions hereto for deficiencies in service and/or quality of goods unless and until: (1) A written complaint is made promptly to supplier stating the precise nature of the deficiencies in service and/or quality of goods; and (2) Supplier is afforded a thirty (30) day period from the date the written notice is received to correct the deficiencies; and (3) Supplier fails to take action to correct those deficiencies within the thirty (30) day period.

Lager argues that its cancellation letter substantially complied with the contract's notice provision. The cancellation letter followed Lager's repeated verbal complaints during the first few months of the contract. These complaints, Lager contends, provided Linens notice of the deficiencies and the opportunity to cure them as required by the contract. Thus, in light of Lager's previous verbal complaints, the letter substantially complied with the notice provision of the contract. We disagree.

Although it is undisputed that Lager repeatedly complained about Linens' performance, Lager's verbal complaints do not abrogate its obligation to comply with the contract's unambiguous notice provision. "It is the duty of courts to construe and enforce contracts as made, and not to make them for the parties. Defendant in the case must stand upon the contract as made by the parties."[6]

The contract provides that before termination due to Linens' deficient service, Lager was required to provide Linens a prompt, written complaint stating the precise nature of the deficiencies. Lager did not do so, as evidenced by Alan LeBlanc's affidavit.[7] It states that Linens' service was deficient from its first delivery. The first delivery was made on March 2, 1998. Yet, the first written complaint was made on June 29, 1998. According to the contract, after receiving the written complaint, Linens had 30 days to correct the deficiency. Lager's June 29 letter cancelled the contract without giving Linens the opportunity to cure the deficiencies. Because Lager did not take the steps necessary to terminate prematurely the con-

---

[5] *Dennard v. Freeport Minerals Co.*, 250 Ga. 330, 332 (1) (297 SE2d 222) (1982).

[6] (Citation and punctuation omitted.) *Atlanta Six Flags Partnership v. Hughes*, 191 Ga. App. 404, 407 (2) (381 SE2d 605) (1989).

[7] The affidavit was submitted in opposition to Linens' summary judgment motion.

tract for deficient service, we find that there is no genuine issue of fact as to its breach of the contract's notice provision.

Lager next argues that it was excused from complying with this provision because of Linens' deficient service, which Lager contends constituted a material breach. We rejected a similar argument in *Mayor &c. of Douglasville v. Hildebrand*.[8] The *Hildebrand* defendant prematurely terminated the plaintiff's employment contract without giving him the notice the contract required. In its defense, the defendant argued that it was excused from complying with the contract's notice provision because the plaintiff did not perform all of the services enumerated in the contract. We held:

> Assuming the [defendant] could repudiate the contract without giving ninety days notice, the requirement for such termination must be based on a material breach, a substantial failure to perform. A breach which is incidental and subordinate to the main purpose of the contract . . . does not warrant . . . termination nor does a mere breach of contract not so substantial and fundamental as to defeat the object of the parties in making the agreement.[9]

In this case, we find that Linens' alleged deficient performance was not a material breach. The object of the contract was the delivery of linen items to Lager's restaurant so that they could be used in its operation. The object was not defeated by Linens' alleged deficient service. There is no allegation in LeBlanc's affidavit that Lager was unable to use the goods delivered by Linens or that Linens' deficient service impeded or prevented the operation of the restaurant. Thus, Lager's argument that the affidavit creates genuine issues of fact as to Linens' material breach is without merit. At most, the affidavit's allegations about deficient service are evidence of a breach which was incidental to the purpose of the contract.

Lager cites several cases in support of its argument that its performance should be excused due to Linens' alleged material breach. All of them, however, are inapposite to this case. In *Powers Ferry Constr. v. Commerce Builders*[10] and *Corrosion Control v. William Armstrong Smith Co.*,[11] this Court excused one party's performance where the other party completely failed to perform. In this case, Linens did not completely fail to perform.

---

[8] 175 Ga. App. 434 (333 SE2d 674) (1985).

[9] (Citation and punctuation omitted.) Id. at 436 (1). We found that the plaintiff's breach of the contract's provisions requiring him to attend meetings and keep the director knowledgeable of his whereabouts was not material.

[10] 191 Ga. App. 327 (381 SE2d 755) (1989).

[11] 148 Ga. App. 75 (251 SE2d 49) (1978).

In *Taliafaro, Inc. v. Rose*,[12] this Court found that evidence that one party prevented the other from performing its obligations under the contract created a jury question. Here, in LeBlanc's affidavit, Lager alleges that Linens' promises to remedy the deficiencies induced Lager to remain in the relationship. This, however, is not evidence that Linens prevented Lager from submitting its complaints in writing as the contract required. Finally, in *Foote & Davies Co. v. Houchin Mfg. Co.*,[13] we held that the trial court should have permitted evidence as to the quality of materials used in a novel, custom-ordered machine to determine whether the buyer was excused from payment of the seller's expenses. *Foote* has no application here, as the trial court considered all of the evidence when it ruled on Linens' motion for summary judgment. Accordingly, we agree with the trial court's conclusion that Linens did not materially breach the contract. Thus, Lager was required to comply with the contract's notice provision.

2. In its second enumeration of error, Lager contends that the trial court erred in granting summary judgment on Linens' open account claim.

> A suit on open account is available as a simplified procedure to the provider of goods and services where the price of such goods or services has been agreed upon and where it appears that the plaintiff has fully performed its part of the agreement and nothing remains to be done except for the other party to make payment. However, when there is a dispute that goes to either assent to the services, terms of the contract, what work was performed, the quality of performance, or cost, then suit on account is not the proper procedure for suit, because there is a factual issue other than nonpayment on the account.[14]

Because we find that a suit on account is not the proper procedure for recovery in this case, we reverse the trial court's grant of summary judgment on the open account claim.

LeBlanc's affidavit evidences disputed issues which preclude summary judgment on the open account claim. The affidavit disputes the quality of Linens' performance. It alleges that items were tattered, worn, discolored, and mismatched. The contract, however, provides that Linens shall provide its goods in a laundered and finished condition.

---

[12] 220 Ga. App. 249 (469 SE2d 246) (1996).
[13] 2 Ga. App. 195 (58 SE 368) (1907).
[14] (Citations and punctuation omitted.) *Five Star Steel Constr. v. Klockner Namasco Corp.*, 240 Ga. App. 736, 738-739 (524 SE2d 783) (1999).

LeBlanc's affidavit also disputes cost, specifically Linens' billing accuracy.[15] It states that Linens' invoice no. 26229 shows that Linens charged 85¢ per unit for pants and coats, when the contract unit price was 80¢. Once Lager produced evidence, however slight, of these factual issues, the burden of persuasion shifted back to Linens to establish the nonexistence of genuine issues of fact.[16] Linens did not attempt to meet its burden. Accordingly, summary judgment was improper.

3. Lager contends that as a matter of law, the contract's liquidated damages provision is unenforceable. We agree and remand the case for a trial on damages.

"Determining whether [the] clause constitutes an enforceable liquidated damages provision or an unenforceable penalty is a question of law for the court."[17] To decide whether the clause is enforceable,

> the court makes a tripartite inquiry to determine if the following factors are present: First, the injury caused by the breach must be difficult or impossible of accurate estimation; second, the parties must intend to provide for damages rather than for a penalty; and third, the sum stipulated must be a reasonable pre-estimate of the probable loss.[18]

On summary judgment, the movant has the burden of showing that as to the three prongs, no genuine issue of material fact exists.[19]

The liquidated damages provision at issue in this case provides, in relevant part:

> 10. *Liquidated Damages.* The CUSTOMER acknowledges that because of the particular nature of the SUPPLIER's business, the actual money damages that would be sustained by SUPPLIER in the event of a breach, premature termination or reduction of this AGREEMENT by the CUSTOMER will be substantial and difficult to determine. The parties, therefore, agree that in the event the CUSTOMER terminates this AGREEMENT prior to the expiration of the

---

[15] See *Schluter v. Perrie, Buker &c., P.C.*, 230 Ga. App. 776, 778 (1) (498 SE2d 543) (1998) (wherein a disagreement about billing entries precluded a suit on open account).

[16] *Five Star Steel Constr.*, supra, 240 Ga. App. at 738.

[17] (Citation and punctuation omitted.) *Jamsky v. HPSC, Inc.*, 238 Ga. App. 447 (519 SE2d 246) (1999).

[18] (Citations and punctuation omitted.) *Southeastern Land Fund v. Real Estate World*, 237 Ga. 227, 230 (227 SE2d 340) (1976).

[19] *Peterson v. P. C. Towers, L.P.*, 206 Ga. App. 591, 592-593 (3) (426 SE2d 243) (1992).

term hereof . . . , then the CUSTOMER shall pay to SUP-PLIER as reasonable liquidated damages (and not as penalty) . . . the total of: (a) One-half (50%) of the average weekly rental for the prior 52 weeks, multiplied by the number of revenue weeks remaining in the terms of this AGREEMENT, plus (b) The charges for . . . any services rendered which are outstanding at the time of termination; plus (c) All costs, including reasonable attorney's fees incurred by SUPPLIER in enforcing its rights hereunder (in the sum of 15 percent of the sum due under Paragraphs (a) and (b) hereof). . . .

The labels and forms of words used in a contract do not determine whether the provision is enforceable as liquidated damages.[20] Thus, the fact that the contract states that damages are difficult to determine and that no penalty is intended, while perhaps reflecting the parties' intent,[21] is inapposite. What is clear, however, is that the contract's formula for computing liquidated damages does not yield a reasonable pre-estimate of probable loss. For this reason, we find that the clause is not enforceable.

Linens relies on *Ramada Franchise Systems v. Motor Inn Investment Corp.*[22] in support of its argument that the liquidated damages provision is enforceable. Though factually similar to this case,[23] *Ramada* is distinguishable particularly as it relates to the third prong of the tripartite inquiry, i.e., the reasonable pre-estimation of probable loss.

The *Ramada* liquidated damages provision looked to the percentage of gross room sales over two years to determine a reasonable estimate of losses. The evidence was undisputed that two years was utilized because it represented the average time required to find a replacement franchisee. Additionally, the *Ramada* agreement included an exception for contracts that expired in less than two years.

In this case, the liquidated damages formula depends on the average weekly rental cost for the prior 52 weeks. The only evidence offered by Linens in support of the liquidated damages clause was the contract itself. There was no testimony or other evidence about the reasonableness of the formula. Even if there had been testimony explaining the reasonableness of the use of 52 weeks in the formula,

---

[20] *Alexander v. Steining*, 197 Ga. App. 328, 330 (I) (2) (398 SE2d 390) (1990).

[21] *Daniels v. Johnson*, 191 Ga. App. 70, 72 (1) (381 SE2d 87) (1989).

[22] 755 FSupp. 1570 (S.D. Ga. 1991).

[23] *Ramada* involves the breach of a franchise agreement that expressly provides for the recovery of liquidated damages upon premature termination.

the formula still could not be utilized because Linens had made, at most, 16 weeks of deliveries before the contract was terminated. Unlike the *Ramada* contract, the contract in this case did not include an exception for early termination. Also, the liquidated damages clause demanded payment for the remainder of the contract. There was no evidence, however, that Linens would not be able to find a replacement for Lager within the weeks remaining in the contract.

"Where the amount plainly has no reasonable relation to any probable actual damage which may follow a breach, the contractual provision will be construed as an unenforceable penalty."[24] Since we find no reasonable relation between the stipulated liquidated damages sum and Linens' probable loss upon Lager's breach of the contract, the liquidated damages clause is unenforceable. Accordingly, we reverse the trial court's entire damages award as it depended upon the enforceability of the contract's liquidated damages clause and remand the case for a trial on damages.

*Judgment affirmed in part and reversed in part. Pope, P. J., and Miller, J., concur.*

DECIDED DECEMBER 11, 2000.

*Long, Aldridge & Norman, Steven P. Smith, Thomas B. Bosch, O. Jackson Cook,* for appellant.
*Smith, Gambrell & Russell, Shannan L. Freeman, Stephen M. Forte, Cele Ogawa,* for appellee.

---

[24] (Citations and punctuation omitted.) *Daniels,* supra, 191 Ga. App. at 72 (1).