A01A2405. DI UNIFORM SERVICES, INC. v. UNITED WATER UNLIMITED ATLANTA, LLC.
(562 SE2d 260)

RUFFIN, Judge.

DI Uniform Services, Inc. d/b/a DII Uniform Services ("DI Uniform") and United Water Unlimited Atlanta, LLC ("United Water") entered into a contract requiring DI Uniform to supply uniforms for United Water workers. After United Water terminated the agreement, DI Uniform sued, alleging that United Water breached the contract. Following trial, a jury found in favor of United Water. DI Uniform appeals, challenging the sufficiency of the evidence, the court's refusal to give certain jury instructions, and its rulings on evidentiary matters. For reasons that follow, we affirm.

1. In two enumerations of error, DI Uniform asserts that there was insufficient evidence that United Water properly terminated the contract. In the first enumeration, DI Uniform merely asserts that "[t]he trial court erred by entering judgment on the jury's verdict" and argues that United Water improperly terminated the contract. DI Uniform claims that it preserved this error for review by filing its notice of appeal. In the other enumeration, DI Uniform asserts that the trial court erred in denying its earlier motion for summary judgment, in which it raised the same argument.

The first enumeration of error is waived. DI Uniform has not shown that it ever raised this argument in a motion for directed verdict at trial and accordingly cannot challenge the court's judgment on this ground on appeal.[1]

The waiver is without consequence, however, because we must also determine whether the trial court erred in denying DI Uniform's motion for summary judgment.[2] In making this inquiry, we are not limited to the evidence presented at the time DI Uniform moved for summary judgment, but instead consider all the evidence presented to the jury.[3] And, if the evidence presented authorized the verdict, "the prior order overruling the motion for summary judgment will be affirmed as constituting, at most, harmless error."[4] We conduct this review under the "any evidence" standard and review the proof in a light most favorable to support the verdict.[5]

Viewed in this manner, the evidence shows that, in September 1998, United Water was bidding for Atlanta's water contract and selected DI Uniform to supply and launder uniforms for its workers. At that time, United Water's Gregory Wilson, who was in charge of vendor support and contract negotiations, met with two representatives from DI Uniform, Moses Adedire and Cindy Williams. Wilson informed Adedire and Williams that, if Atlanta accepted United Water's bid, it would take over operations on January 1, 1999, and wanted all of its employees in uniform at that time. According to Wilson, Adedire and Williams assured Wilson that "they had done uniforms before," gave him a brochure listing the company's uniform services, and guaranteed they could provide the service. In fact, DI Uniform had never before supplied or laundered uniforms.

In October 1998, United Water was awarded Atlanta's water contract, and Wilson continued meeting with Adedire and Williams about the company's uniform requirements. United Water required a total of 13,500 articles of clothing to dress 400 employees, and at each of these meetings, Wilson reminded DI Uniform about the importance of the January 1 start-up date. DI Uniform measured employees for uniforms from November 17 through 19. At a November 30 meeting with Adedire and Williams, Wilson granted Adedire's

---

[1] See generally OCGA § 9-11-50 (a), (b) (addressing motions for directed verdict and judgment notwithstanding the verdict); *Dukes v. Ruth*, 203 Ga. App. 246, 247 (2) (416 SE2d 565) (1992) (failing to move for directed verdict during trial results in waiver of issue on appeal); *Fidelity &c. Ins. Co. of N.Y. v. Massey*, 162 Ga. App. 249, 250 (1) (291 SE2d 97) (1982) (same).

[2] See *Hill v. Willis*, 224 Ga. 263, 265-267 (2) (161 SE2d 281) (1968), overruled in part on other grounds, *Jebco Ventures v. City of Smyrna*, 259 Ga. 599, 601 (1) (385 SE2d 397) (1989); see also *Weir v. Kirby Constr. Co.*, 213 Ga. App. 832, 835-836 (4) (446 SE2d 186) (1994).

[3] See *Hill*, supra at 267 (2).

[4] Id.

[5] See *H. J. Russell & Co. v. Jones*, 250 Ga. App. 28-29 (550 SE2d 450) (2001).

request to move the required delivery date back to January 7, 1999, and, Wilson testified, Adedire said DI Uniform would deliver all the uniforms by that time.

On December 29, 1998, DI Uniform and United Water executed a written contract formalizing their agreement for DI Uniform to supply and launder the uniforms. Under the contract, the uniforms remained the property of DI Uniform, and the company rented the garments to, and maintained them for, United Water. The written contract did not provide a delivery date, but merely stated that it "takes effect as of the date of signing and continues for sixty (60) months after the date of first installation." The contract also contained a termination clause providing:

> Any complaints about the quality of service which have not been taken care of in the normal course of business must be sent by registered letter to [DI Uniform's] General Manager. If [DI Uniform] then fails to resolve any material complaint in a reasonable period of time, [United Water] may terminate this agreement provided all rental items are paid for at the rates listed above as replacement value or returned to [DI Uniform] in good and usable condition.

On January 7, 1999, DI Uniform failed to deliver any uniforms. Wilson telephoned Adedire, who assured Wilson that he was working things out. On January 25, DI Uniform delivered 77 of the required 13,500 garments required under the contract. Wilson testified that, in addition to the obvious deficiency in the number of items delivered, there were several quality-related problems. Wilson called Adedire, told him what was wrong, and asked him to pick up the uniforms.

The following month, United Water continued its efforts to have DI Uniform deliver conforming uniforms. During a February 17 meeting, Wilson toured DI Uniform's facilities, and, after seeing only two employees — one on a sewing machine and the other pressing patches on uniforms — he became concerned that DI Uniform was not "capable of supporting [a] large uniform contract." Thus, on February 20, United Water, still without acceptable uniforms, hand-delivered to DI Uniform a letter complaining about incomplete delivery and other quality-related problems. The letter concluded: "[t]hese delays can not continue because our employees can no longer be without uniforms. All uniform issues must be resolved immediately. I would like a written response addressing these issues."

Two days later, on February 22, 1998, DI Uniform delivered 418 articles of clothing, and on February 24, it delivered another 892 articles. According to Wilson, not only were these deliveries incomplete,

many garments were the wrong size and some jackets were made of material that did not meet United Water's requirements.

On February 25, Wilson again met with Adedire and Williams to discuss the deficiencies. At the meeting, Wilson complained about quality-related problems such as mis-sizing, inappropriate fabric, and supplying short-sleeve shirts where long-sleeve shirts were required, and about DI Uniform's incomplete delivery. The parties agreed that Adedire and Williams would call the next day to provide a firm delivery date. According to Wilson, however, they failed to do so. Instead, on March 3, 1999, DI Uniform apparently delivered another 1,347 articles that had the same defects as the previous delivery. That same day, United Water sent DI Uniform a certified letter summarizing the deficiencies Wilson had raised during the February 25 meeting and complaining that DI Uniform had still not provided a firm delivery date. Although United Water's letter required a response by the following day, Williams testified that DI Uniform did not receive the letter until March 10.

On March 10, 1999, United Water sent DI Uniform a third letter outlining the deficiencies discussed in its previous letter and requesting a written response by March 12. On the afternoon of March 11, DI Uniform attempted to deliver more uniforms to United Water, but was unsuccessful because DI Uniform had not scheduled the delivery and United Water's warehouse had already closed for the day.[6] At a March 18 meeting between the parties, DI Uniform apparently complained about unpaid invoices, and the parties discussed a possible delivery date and another meeting date. Although meeting notes indicated that April 1 was mentioned as a delivery date, Wilson testified that DI Uniform never provided a firm completion date. Adedire testified that he left the March 18 meeting thinking that the only unresolved complaint was the undelivered uniforms.

Contrary to Adedire's impressions, Wilson testified that, from United Water's perspective, most of the problems remained unresolved. Accordingly, United Water decided to terminate the contract and notified DI Uniform of its decision at a March 29 meeting and in a letter sent to DI Uniform that same day. As part of its efforts to wind up the parties' business affairs, United Water offered to buy any uniforms that met its specifications, or alternatively, to return the uniforms in its possession. It appears that DI Uniform was not receptive to either offer and, at the time of trial, the delivered uniforms remained in United Water's warehouse.

On appeal, DI Uniform argues that the evidence showed United

---

[6] Although DI Uniform asserts in its brief that it was attempting "to make its *final* delivery," it has not cited any evidence that supports this assertion. (Emphasis supplied.)

Water's termination of the contract was improper for three reasons. First, United Water did not notify DI Uniform of any unresolved complaints in its registered letter. Second, United Water did not give DI Uniform a reasonable amount of time to cure the deficiencies. And third, United Water failed to pay for or return the delivered uniforms. These arguments give virtually no credence to the evidence discussed above.

In addressing these arguments, we must first dispel DI Uniform's apparent belief that United Water had no right to terminate the contract for untimely delivery because no delivery date was stated in the written contract. The delivery deadline, however, could have been established by the parties' verbal agreement.[7] The law provides that

> a distinct, collateral oral agreement that is consistent with and usually forms part of the consideration or inducement for the second written agreement may be established by parol evidence. The test to determine whether the oral agreement is one which the law will permit to be plead[ed] and proved is whether the oral agreement constitutes a part of the written contract or whether, instead, it is a separate and distinct oral contract which is not inconsistent with the written contract. If the latter, it admits of pleading and proof.[8]

In this case, the written contract did not provide a delivery date or contain a merger clause that would preclude consideration of other, consistent oral agreements.[9] Thus, the January 7, 1999 delivery date could have been established by a separate oral agreement. Because evidence of such oral agreement was presented to the jurors, they were not required to rely exclusively on the parties' written contract.[10]

As for United Water's termination of the uniform contract, evidence showed that it repeatedly complained to DI Uniform about its untimely delivery and about numerous, quality-related deficiencies.

---

[7] We note that, in addressing this issue below, both parties and the trial court relied on general contract law to the exclusion of the Uniform Commercial Code's provisions on leases. See OCGA § 11-2A-101 et seq. Although it is possible that the parties' contract was subject to the UCC, inasmuch as this was not argued below or on appeal, we need not address it now.

[8] (Citations and punctuation omitted.) *Lee v. White*, 249 Ga. 99, 100-101 (1) (a) (286 SE2d 723) (1982).

[9] Cf. *Great American Builders v. Howard*, 207 Ga. App. 236, 240 (2) (427 SE2d 588) (1993) (merger clause precluded consideration of distinct oral agreement).

[10] See *Lee*, supra; *Diamondhead Corp. v. Robinson*, 144 Ga. App. 60, 61-62 (2) (240 SE2d 572) (1977).

Even if DI Uniform resolved the quality problems noted in United Water's first, hand-delivered letter, DI Uniform had still not delivered most of the garments required under the agreement, a complaint raised in that letter. Furthermore, DI Uniform mischaracterizes the second, certified letter, by arguing that it did not complain about deficiencies, but merely "summarize[d] . . . topics." The summarized topics were statements about specific problems of uniform quality and incomplete delivery that Wilson raised at the February 25 meeting. Thus, the jury was authorized to find that both letters raised specific, unresolved complaints about the quality of DI Uniform's service.

Evidence also showed that United Water gave DI Uniform a reasonable period of time to resolve the complaints. The issue of what constitutes a reasonable time was for the jury to resolve.[11] Here, nineteen days elapsed between the time DI Uniform received United Water's certified complaint letter and the time United Water terminated the agreement, and over one month had passed since the hand-delivered letter. Even if the jury ignored the hand-delivered letter, evidence showed that, after receiving the certified letter, DI Uniform still refused to provide a firm delivery date and made no reasonable attempts to deliver any uniforms. In addition, evidence showed that the industry standard for delivery is four to six weeks from the time employees are measured. In light of DI Uniform's inaction, and considering that almost three months had passed since the uniforms were required to be delivered under the parties' agreement and pursuant to industry standards, the jury could have found that DI Uniform failed to resolve United Water's complaints in a reasonable period of time.[12]

As for DI Uniform's last argument — that United Water failed to pay for or return the uniforms — evidence showed that United Water attempted to do so, but its attempts were frustrated by DI Uniform's rejection of both offers. Thus, DI Uniform cannot complain that United Water failed to perform this last condition of termination.[13]

For these reasons, we conclude that, if the trial court erred in denying DI Uniform's motion for summary judgment, the error was harmless.[14]

2. DI Uniform also asserts that the trial court erred in refusing to instruct the jury that United Water was required to strictly comply

---

[11] See *Dean v. Great Northern Nekoosa Corp.*, 251 Ga. 131, 132 (1) (303 SE2d 445) (1983); *Solomon Refrigeration v. Osburn*, 148 Ga. App. 772, 775 (3) (252 SE2d 686) (1979).

[12] See id.

[13] See *Taliafaro, Inc. v. Rose*, 220 Ga. App. 249, 250 (1) (469 SE2d 246) (1996); *Feagin v. Feagin*, 174 Ga. App. 474, 475 (330 SE2d 410) (1985).

[14] See *Hill*, supra at 267.

with the contract's termination clause. We disagree. In a similar case, *Lager's, LLC v. Palace Laundry*,[15] we recently addressed the issue of whether Lager's complied with a termination clause in the parties' linen services contract. We ruled that Lager's actions must be reviewed for "substantial compliance, not strict compliance."[16] Although DI Uniform cites other cases in which we have required strict compliance to terminate an agreement, these cases concerned termination notices that resulted in forfeiture of real property rights under a lease[17] or easement,[18] or revocation of a surety.[19] The cited cases are, therefore, distinguishable. Because the requested charge was an incorrect statement of the law, the trial court properly refused to give it to the jury.[20]

3. DI Uniform similarly asserts that the trial court erred in refusing to instruct the jury that United Water's termination of the contract without complying with the termination clause would be a breach of contract. The requested charge, however, did not inform the jury that only substantial compliance was required and was thus an incomplete statement of the law that was properly rejected.[21] Furthermore, the trial court covered the same principle by instructing the jurors that, in the termination clause, the parties agreed on the circumstances and procedure under which United Water could terminate the contract, that DI Uniform alleged United Water breached the contract by improperly terminating it, and that the parties were required to substantially comply with the contract. The court was not required to charge the exact language requested.[22]

4. DI Uniform next contends that the trial court erred in admitting hearsay into evidence. The purported hearsay concerned United Water's post-termination attempt to either purchase the uniforms or return them to DI Uniform. United Water's attorney, Kevin Rew, testified that he received no written response to his offer, on behalf of United Water, to purchase the uniforms. Rew then testified that he telephoned DI Uniform "to get an address so that United Water could deliver to [DI Uniform] the uniforms that it had in its possession. . . . [United Water] had given up on the prospect of purchasing the uniforms." But according to Rew, the woman who answered the

---

[15] 247 Ga. App. 260, 261-262 (1) (543 SE2d 773) (2000).

[16] Id.

[17] See *Woodall v. Pharr*, 119 Ga. App. 692, 693 (1) (168 SE2d 645) (1969).

[18] See *Preferred Real Estate Equities v. Housing Systems*, 248 Ga. App. 745, 747 (548 SE2d 646) (2001).

[19] See *Cosby v. A. M. Smyre Mfg. Co.*, 158 Ga. App. 587, 590-591 (3) (281 SE2d 332) (1981).

[20] See *Roswell Properties v. Salle*, 208 Ga. App. 202, 208 (10) (430 SE2d 404) (1993).

[21] See *Heffernan v. Home Depot U.S.A.*, 226 Ga. App. 167, 168 (2) (486 SE2d 51) (1997).

[22] See *Wadkins v. Smallwood*, 243 Ga. App. 134, 140 (5) (b) (530 SE2d 498) (2000).

phone "didn't identify herself, . . . treated [his] call with suspicion, and . . . was uncooperative. She would not give me the address." DI Uniform objected to the testimony as hearsay, and the trial court overruled the objection. We find no error.

Hearsay is defined as evidence that "does not derive its value solely from the credit of the witness but rests mainly on the veracity and competency of other persons."[23] It is "a statement made out of court . . . offered in evidence *to prove the truth* of the matter stated in the out-of-court statement."[24] In this case, it is not clear that Rew testified about any statement that meets this definition. Though he talked about the phone call, his impressions, and what was *not* disclosed, Rew did not report what the unidentified receptionist said. We cannot discern how the credibility of this testimony required the presence of the declarant in court.

Furthermore, to the extent that Rew testified about what the unidentified speaker said, such testimony was clearly relevant to explain his client's conduct in failing to return the uniforms, as required by the contract. OCGA § 24-3-2 renders such evidence admissible.[25] When the conduct and motives of the actor are relevant to the issues on trial, then conversations and similar evidence known to the actor are admissible to explain his conduct.[26] Because United Water's performance and DI Uniform's frustration of that performance were issues central to the controversy, Rew's testimony about the unidentified speaker's failure to cooperate was admissible as original evidence, and the trial court did not err in overruling DI Uniform's objection.[27]

5. DI Uniform acknowledges that its remaining enumerations of error are significant only if this matter is remanded. Because we have not found any error requiring remand, it is unnecessary to address the remaining asserted errors.

*Judgment affirmed. Johnson, P. J., and Ellington, J., concur.*

DECIDED MARCH 19, 2002.

*Smith, Currie & Hancock, George D. Wenick, James W. Copeland,* for appellant.

[23] OCGA § 24-3-1 (a).
[24] (Emphasis in original.) *Momon v. State,* 249 Ga. 865, 867 (294 SE2d 482) (1982).
[25] See id. at 866-867.
[26] See id. at 867; *Harrison v. Jenkins,* 235 Ga. App. 665, 670 (2) (510 SE2d 345) (1998).
[27] See id.

*Arnall, Golden & Gregory, Richard A. Mitchell, Charles T. Huddleston, Andrew B. Flake,* for appellee.