A10A0928. NATIONAL SERVICE INDUSTRIES, INC. v. HERE TO SERVE RESTAURANTS, INC.

(695 SE2d 669)

MIKELL, Judge.

In 2006, the predecessor in interest to appellant National Service Industries, Inc. ("NSI"), filed a breach of contract action against Here to Serve Restaurants, Inc., alleging that Here to Serve prematurely terminated its agreements to rent linens from NSI and that as a result, NSI was entitled to recover liquidated damages. The parties filed cross-motions for summary judgment on the issue of the enforceability of the liquidated damages provisions in their con-tracts. In an order entered in 2007, the trial court declared the provisions an unenforceable penalty, but ruled that NSI could proceed to trial to prove its actual damages flowing from the alleged breach of contract. NSI then amended its complaint to seek lost profits. Ultimately, however, NSI stipulated that it sought no dam-ages other than liquidated damages, and, in 2009, the trial court

granted summary judgment to Here to Serve. The sole issue on appeal is whether the trial court erred by concluding that the provisions were an unenforceable penalty. Finding no error, we affirm.

The record shows that the parties entered into two service contracts whereby NSI agreed to provide Here To Serve with all of the linens required for all six of its restaurants. The first contract, entered into on May 16, 2005, covered five restaurants and had a term of forty-eight months, while the second contract, dated June 27, 2005, concerned a newly opened restaurant and ran for sixty months. During the week of December 5, 2005, NSI relocated its plant and experienced certain difficulties, resulting in delivery shortages to Here to Serve during the busiest time of year for its restaurants. Here to Serve terminated the agreements with NSI by letter dated December 16, 2005. NSI responded by letter, noting that under the contracts, Here to Serve was required to give NSI notice and an opportunity to cure any deficiencies in performance. NSI also invoked the contracts' identical liquidated damages clauses, which state as follows:

> [I]n the event of termination of services by [Here to Serve] in breach of this agreement, [Here to Serve] will pay liquidated damages in an amount equal to forty percent (40%) of the average weekly fees charged for service prior to the date of such breach (or to be charged if service has not commenced) times the number of weeks remaining in the unexpired Term. Such liquidated amount is not a penalty but is intended to compensate [NSI] for damages it will incur in the event of such breach. The parties acknowledge such damages would be difficult to ascertain and that such amount is a reasonable estimate of the damages [NSI] would incur.

In the letter, NSI calculated the amount of liquidated damages as $590,559.51, while in the complaint, NSI demanded $486,875.89. The parties filed cross-motions for summary judgment on the enforceability of these clauses, and the trial court granted Here to Serve's motion. NSI appeals.

A tripartite inquiry governs this issue:

> A contractual provision requiring payment of a stipulated sum by one of the parties upon termination or cancellation of the contract will be treated as an enforceable liquidated damages provision rather than an unenforceable penalty only if all three of the following factors are present: First,

the injury caused by the breach must be difficult or impossible of accurate estimation; second, the parties must intend to provide for damages rather than a penalty; and third, the stipulated sum must be a reasonable pre-estimate of the probable loss resulting from such a breach.[1]

Determining whether a liquidated damages provision is enforceable is a question of law for the court, which necessarily requires the resolution of questions of fact.[2] At trial the burden is on the defaulting party to show that the provision is a penalty, but this burden does not arise at the summary judgment stage.[3] To obtain summary judgment, the moving party must show there is no genuine issue of material fact as to the three factors set out above and that the undisputed facts warrant judgment as a matter of law.[4] To obtain summary judgment, a defendant need not produce any evidence, but must point to an absence of evidence supporting at least one essential element of the plaintiff's claim.[5] Our review of a grant of summary judgment is de novo, and we view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmovant.[6] Properly viewed, the relevant evidence shows the following.

As quoted above, the liquidated damages provision calls for the payment of 40 percent of the average weekly fees charged for service prior to the date of breach, or to be charged, if service has not yet begun, times the number of weeks remaining in the unexpired term. In support of its motion for summary judgment, NSI's chief financial officer, Gene Laminack, testified by affidavit that the liquidated damages amount was calculated based on an anticipated 10 percent profit plus 30 percent fixed costs, including "engineering support, supervisory labor, equipment costs and depreciation, building overhead and administrative costs." Laminack averred that based on an analysis of its historical costs, NSI estimates that on average, the fixed costs equal 30 percent of the revenue associated with each

---

[1] (Citation and punctuation omitted.) *Atlanta Six Flags Partnership v. Hughes*, 191 Ga. App. 404, 407-408 (3) (381 SE2d 605) (1989), citing *Southeastern Land Fund v. Real Estate World*, 237 Ga. 227, 230 (227 SE2d 340) (1976).

[2] *Liberty Life Ins. Co. v. Thomas B. Hartley Constr. Co.*, 258 Ga. 808, 809 (375 SE2d 222) (1989).

[3] Id.

[4] Id.; see *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

[5] *Lau's Corp.*, supra. See also *Morgan Enterprises v. Gordon Gillett Business Realty*, 196 Ga. App. 112 (395 SE2d 303) (1990) ("On cross-motions for summary judgment, each party must show there is no genuine issue of material fact regarding the resolution of these three points of inquiry and that each, respectively, is entitled to summary judgment; either party, to prevail by summary judgment, must bear its burden of proof").

[6] See *Carter v. Tokai Financial Svcs.*, 231 Ga. App. 755 (500 SE2d 638) (1998).

contract; that the fixed costs are incurred regardless of the volume of business processed by the facility; that Here to Serve was an "irreplaceable customer" due to its unique size and linen demands; and that the NSI facility had not yet reached its normal operating volume and could have handled additional customers.

Edgar Ringer, a senior vice president of NSI, deposed that there are different costs involved in servicing different customers, and some customers are more profitable than others. According to Ringer, profitability of a contract is determined by calculating costs according to a computer model that generated a spreadsheet, and then applying costs against revenue. Such costs included materials, washing expenses, sales commission, delivery costs, and general and administrative costs. Ringer did not know, however, whether its contracts with Here to Serve were profitable. Ringer deposed that NSI uses the same liquidated damages clause in all of its contracts, although the provision has been "updated and verified" numerous times, as recently as 2004. He further deposed that "the actual damages were the anticipated profit of the contract," among other things. Ringer admitted that at the time the contracts were entered into, there was no calculation to determine what the damages would be in the event of a breach.

On October 10, 2006, Here to Serve served discovery requests upon NSI, including requests to produce any documents supporting the allegation in its complaint that it suffered damages of $486,875.89. Finally, in interrogatory responses submitted on May 15, 2009, NSI disclosed that it was seeking $76,500 in actual damages. Documents produced by NSI did not support that figure, and Here to Serve moved for summary judgment on NSI's claim for actual damages. NSI then stipulated that it would not seek to prove actual damages at trial, and this stipulation was made a part of the court's final order granting summary judgment to Here to Serve.

NSI argues that in its order issued in 2007, the trial court erred in concluding that the liquidated damages clause was an unenforceable penalty. Specifically, NSI contends that Laminack's affidavit demonstrates, as a matter of law, that the damages caused by the breach were difficult or impossible to estimate accurately. NSI points to Laminack's testimony that damages associated with the unscheduled loss of one customer were difficult to calculate because the fixed costs "are associated with the entire group of contracts being served and are not specific to any one contract or customer." NSI also contends that Laminack's affidavit demonstrates the parties' intent to provide for damages rather than for a penalty because he explained the formula and fixed costs. For this same reason, NSI argues that its evidence demonstrates that the damages specified were a reasonable pre-estimate of the probable loss.

We note that much of Laminack's affidavit is conclusory, and conclusory statements in affidavits unsupported by factual evidence are insufficient to avoid summary judgment.[7] For example, the affidavit states that Here to Serve was "irreplaceable." Yet NSI offered no empirical or financial data to support this or any other assertion regarding costs or revenue. Significantly, NSI offered no explanation of how it calculated the sum sought in the complaint or how that sum reasonably related to the probable loss. The affidavit did not state a *dollar amount*, either of fixed costs or of lost profit. Ringer provided none during his deposition. When NSI finally produced documents during discovery, long after the entry of the first order declaring the liquidated damages a penalty, the documents did not support their damages claims.

In *Lager's, LLC v. Palace Laundry*,[8] we considered a linen services contract with a liquidated damages provision similar to the one at issue in this case. In *Lager's*, the contract required the customer to pay, upon premature termination of the contract, one-half of the average weekly rental for the prior 52 weeks, multiplied by the weeks remaining on the contract.[9] Because there was no testimony explaining the reasonableness of the provision and the contract had been in effect for only 16 weeks, we held that the contract's formula for computing liquidated damages did not yield a reasonable pre-estimate of probable loss.[10] Although *Lager's* is not on all fours with this case, we glean certain lessons from it. Notably, although the liquidated damages provision in that case demanded payment for the remainder of the contract, there was no evidence that the supplier could not secure a replacement. The same is true in this case. Laminack's statement that Here to Serve was "irreplaceable" is conclusory and is not supported by any factual evidence. It is insufficient to avoid summary judgment. Moreover, NSI did not explain why it would be reasonable to recoup 40 percent of average weekly rentals for the entire term of the contracts even if service had not yet begun.

We also noted in *Lager's* that while contractual language may reflect the parties' intent for the damages to be liquidated, the words used are not determinative.[11] What we find clear in this case, as we

[7] *Bd. of Natural Resources v. Walker County*, 200 Ga. App. 301, 307 (3) (407 SE2d 436) (1991).

[8] 247 Ga. App. 260 (543 SE2d 773) (2000).

[9] Id. at 265-266 (3).

[10] Id. at 266-267 (3).

[11] Id. at 266 (3). Accord *Roswell Properties v. Salle*, 208 Ga. App. 202, 205-206 (3) (c) (430 SE2d 404) (1993).

did in *Lager's*,[12] is that the liquidated damages were not a reasonable pre-estimate of the probable loss. Because no other Georgia case concerns the enforceability of liquidated damage provisions in linen service contracts, we examine cases from other jurisdictions.

A similar liquidated damages provision in one of NSI's contracts was at issue in *Secrist v. Nat. Svc. Indus.*[13] The contract in that case specified that liquidated damages were 40 percent of the "gross receipts" for the unexpired term, and the provision specifically allocated 30 percent for overhead and 10 percent for profit.[14] A Florida appeals court determined that based on the evidence presented at the bench trial, "the trial court could well have found the essentially unsubstantiated testimony of NSI's employees that the overhead allocation was reasonable to be incredible. . . . NSI produced absolutely no evidence of actual damages."[15] The appeals court declined to rule that the provision was a penalty, but concluded that the trial court did not err in awarding NSI nothing for its overhead expenses.[16] The trial court awarded lost profits, and that portion of the judgment was affirmed.[17]

A liquidated damages provision worded the same as the one under consideration in *Secrist* was construed to be enforceable in Ohio in *Domestic Linen Supply &c. Co. v. Kenwood Dealer Group*,[18] but in that case, the linen supplier proved actual damages of $152,000, while liquidated damages were only $91,354.60, and the supplier was limited to recovery of the liquidated amount.[19]

In another Florida case,[20] the appeals court considered a liquidated damages clause requiring the defaulting party to pay the linen supplier 75 percent of the average weekly service charge for all the unexpired weeks remaining in the agreement.[21] The formula yielded $102,309. The court ruled that "because the correct computation of the actual lost profits is $10,437, and $10,437 is clearly disproportionate to the liquidated damages of $102,309, such that it would be unconscionable to impose the liquidated damages in this case, the trial court must award lost profits."[22]

In New York, an appeals court upheld liquidated damages

---

[12] Supra.
[13] 395 S2d 1280 (Fla. 2d DCA 1981).
[14] Id. at 1282.
[15] Id. at 1283.
[16] Id.
[17] Id.
[18] 109 Ohio App.3d 312 (672 NE2d 184) (1996).
[19] Id. at 321.
[20] *RKR Motors v. Associated Uniform Rental &c.*, 995 S2d 588 (Fla. 3d DCA 2008).
[21] Id. at 590.
[22] Id. at 595.

awarded to a linen supplier on summary judgment based on a contract stating that damages would be calculated by multiplying one-half of the customer's average weekly rentals prior to the breach times the number of weeks remaining on the five-year term.[23] The customer terminated the contract after almost two years, and plaintiff, using this formula, sued for $6,080. The supplier presented specific monetary evidence of its actual damages, and the court determined that "the liquidated damages amount is reasonably proportionate to plaintiff's probable loss and does not constitute an unenforceable penalty."[24]

These cases illustrate the need for specific evidence in order to demonstrate the reasonableness of contractual liquidated damages as an estimate of the probable loss upon a breach of the type of contract at issue here. In the case at bar, the only monetary amount ever claimed as actual damages by NSI was $76,500, and NSI abandoned this claim by stipulating to the trial court that it was not seeking recovery of any amount of actual damages. "Where the amount [of liquidated damages] plainly has no reasonable relation to any probable actual damage which may follow a breach, the contractual provision will be construed as an unenforceable penalty."[25] Moreover, in doubtful cases, "the courts favor the construction which holds the stipulated sum to be a penalty, and limits the recovery to the amount of damage(s) actually shown, rather than a liquidation of the damages."[26] Applying these principles, we conclude that Here to Serve sustained its burden of showing that the amount stipulated in the contracts as liquidated damages was not a reasonable pre-estimate of the probable loss. Therefore, the trial court did not err in granting its motion for summary judgment.

*Judgment affirmed. Ellington and Doyle, JJ., concur.*

DECIDED MAY 14, 2010.

*Ichter Thomas, Cary Ichter*, for appellant.
*Weinstock & Scavo, Louis R. Cohan, Shalanda M. J. Miller*, for appellee.

---

[23] *Ames Linen Svc. v. Katz*, 8 AD3d 945, 946 (N.Y. App. 2004).

[24] Id. at 947.

[25] (Punctuation and footnote omitted.) *Lagers*, supra at 267 (3).

[26] (Punctuation omitted.) *Caincare, Inc. v. Ellison*, 272 Ga. App. 190, 195 (1) (612 SE2d 47) (2005), citing *Fortune Bridge Co. v. Dept. of Transp.*, 242 Ga. 531, 532 (250 SE2d 401) (1978).