A10A2349. JR REAL ESTATE DEVELOPMENT, LLC
v. CHEELEY INVESTMENT, L.P. et al.
(709 SE2d 577)

SMITH, Presiding Judge.

JR Real Estate Development, LLC ("JR Real Estate"), the buyer, appeals from the trial court's grant of summary judgment to Cheeley Investment, L.P., Genevieve Breedlove, and SMC Properties, L.P. ("Cheeley"), the seller, on its claim to $900,000 in earnest money as liquidated damages. Because genuine issues of material fact remain, we reverse.

1. JR Real Estate contends that the trial court erred in granting

summary judgment to Cheeley because "the liquidated damages fail to pass the tripartite inquiry required under Georgia law."

> Determining whether a liquidated damages provision is enforceable is a question of law for the court, which necessarily requires the resolution of questions of fact. At trial the burden is on the defaulting party to show that the provision is a penalty, but this burden does not arise at the summary judgment stage. To obtain summary judgment, the moving party must show there is no genuine issue of material fact as to the three factors set out [in *Southeastern Land Fund v. Real Estate World*, 237 Ga. 227 (227 SE2d 340) (1976)] and that the undisputed facts warrant judgment as a matter of law. To obtain summary judgment, a defendant need not produce any evidence, but must point to an absence of evidence supporting at least one essential element of the plaintiff's claim. Our review of a grant of summary judgment is de novo, and we view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmovant.

(Citations and punctuation omitted.) *Nat. Svc. Indus., Inc. v. Here to Serve Restaurants*, 304 Ga. App. 98, 100 (695 SE2d 669) (2010).

So viewed, the evidence showed that on May 12, 2008, JR Real Estate entered into a "Land Purchase and Sale Agreement" (the "agreement") with Cheeley for the purchase of 53.937 acres of land in Gwinnett County, Georgia. The agreement provided for a purchase price of $5,933,070, and a deposit of $100,000 in earnest money. Paragraph 12 of the agreement provided further:

> Seller shall be entitled to the earnest money if this Agreement is terminated due to the default of Buyer. In such event, Holder may pay the earnest money to Seller by check, which if accepted and deposited by Seller, shall constitute liquidated damages in full settlement of all claims of Seller. It is agreed to by the parties that such liquidated damages are not a penalty and are a reasonable pre-estimate of Seller's actual damages, which damages are difficult to ascertain.

In a "Rider to Land Purchase and Sale of Agreement" (the "rider") to the agreement, the parties agreed to "close the sale of the Property in escrow (the 'Escrow Closing Date') on July 31, 2008." The rider explained that JR Real Estate entered into the contract to develop a soccer and sports facility, and that the property would have

to be rezoned to a commercial class as a result, but that Cheeley would not permit the rezoning until after the escrow closing date. The rider provided further:

> Buyer may extend the Escrow Closing Date: (i) to August 31, 2008 provided that the earnest money deposit of $100,000.00 shall be deemed non refundable to Buyer unless Seller defaults under this Agreement and (ii) to September 30, 2008 provided that Buyer deposits with Holder an additional earnest money deposit of $50,000.00, which additional earnest money deposit shall be deemed non refundable to Buyer unless Seller defaults under this Agreement.

The rider also revised paragraph 12 of the agreement to provide:

> Notwithstanding anything to the contrary herein, the parties have agreed that the actual damages suffered by Seller if this Agreement is terminated due to a default by Buyer would be extremely difficult or impracticable to ascertain. After negotiation, the parties have agreed that, considering all the circumstances existing on the date of this Agreement, the amount of Earnest Money deposit is a reasonable estimate of the damages that Seller would incur in such an event and that the aforesaid payment of Earnest Money deposit is liquidated damages hereunder and not a penalty.

During the months of September and October 2008, the parties, through their counsel, exchanged a series of communications regarding extending the closing date beyond September 30. Cheeley proposed that JR Real Estate provide an additional $1,000,000 in earnest money and a lender's commitment to finance the purchase. Cheeley then stated that if the lender's commitment was not provided, the required earnest money would increase to $2,816,535, half of the purchase price.

When the closing did not occur on September 30, the parties entered into an amendment to the agreement (the "amendment") which provided that in exchange for waiving the escrow closing requirement, (1) the closing date would be extended to November 14, 2008, (2) the purchase price would be reduced to $5,735,000, and (3) JR Real Estate would have to provide $750,000 in earnest money in addition to the $150,000 already held. The amendment provided that the $750,000 shall constitute " 'Earnest Money' under the Agreement." The sale was also made contingent upon the rezoning of the property: "If the Rezoning is denied for any reason, . . . Earnest

Money shall be immediately released by Holder to Purchaser, and the parties shall have no further obligations or liability under the Agreement."

Although JR Real Estate's rezoning application was approved, the closing did not occur. Cheeley declared JR Real Estate in default and claimed that it was entitled to the $900,000 in earnest money as liquidated damages. JR Real Estate filed a verified complaint for specific performance, declaratory judgment, and injunctive relief.[1] Cheeley filed a verified answer and counterclaim seeking a declaratory judgment that it was entitled to the $900,000 in earnest money, and seeking prejudgment interest and attorney fees, and to dismiss JR Real Estate's complaint.

The parties filed cross-motions for summary judgment with Cheeley claiming that because JR Real Estate breached the agreement, Cheeley was entitled to $900,000 in earnest money as liquidated damages. Following a hearing, the trial court granted Cheeley's motion for summary judgment and denied JR Real Estate's motion, concluding that Cheeley was entitled to liquidated damages in the amount of $900,000. It is from this order that JR Real Estate appeals.

> In *Southeastern Land Fund*[, supra], our Supreme Court developed a three-part test for analyzing liquidated damages provisions. As explained by that court: "First, the injury caused by the breach must be difficult or impossible of accurate estimation; second, the parties must intend to provide for damages rather than for a penalty; and third, the sum stipulated must be a reasonable pre-estimate of the probable loss." (Citations and punctuation omitted.) Id. at 230. A liquidated damages clause is enforceable only if it meets each of these requirements.

(Citation and punctuation omitted.) *Fuqua Constr. Co. v. Pillar Dev., Inc.*, 293 Ga. App. 462, 463-464 (667 SE2d 633) (2008).

(a) Here, the parties do not dispute the first factor — that the injury caused by the breach is difficult or impossible of accurate estimation.

(b) "As for the second [liquidated damages] requirement, we ascertain the intent of the parties by first looking to the language of the contract. Although the words used by the parties are not conclusive, they are a significant factor in determining the parties' intent." (Citation and footnote omitted.) *Mariner Health Care*

---

[1] The claim for specific performance and one of the claims for a declaratory judgment subsequently were dismissed.

*Mgmt. Co. v. Sovereign Healthcare*, 306 Ga. App. 873, 876 (1) (703 SE2d 687) (2010). Construed together, the agreement and rider provided that $150,000 in earnest money "is a reasonable estimate of the damages" and "is liquidated damages." This supports a finding that the parties intended to provide for liquidated damages in the amount of $150,000 rather than a penalty. See id.

The amendment provided for another $750,000 as " 'Earnest Money' under the Agreement" that was "non-refundable to [JR Real Estate]," but the payment of that amount was "in exchange for waiving the Escrow Closing requirement and the extension of the Closing Date." In fact, the amendment provided that Cheeley would be entitled to the additional earnest money if the rezoning application was denied or if any rezoning appeal extended longer than 60 days, conditions involving no fault of JR Real Estate. So although the parties agreed that the additional $750,000 payment was " 'Earnest Money' under the Agreement," it is not clear whether they intended it be included as a part of the liquidated damages. The amendment contained no liquidated damages provision or revised liquidated damages provision as was contained in both the original agreement and in the rider. Indeed, "a liquidated damages provision is or is not enforceable based upon the intent that was manifested at the time that the provision was originally proposed and agreed to." *Adams v. D & D Leasing Co. of Ga.*, 191 Ga. App. 121, 123 (1) (381 SE2d 94) (1989).

Robert Cheeley of Cheeley Investments, L.P. averred that Cheeley initially requested $1,100,000 when negotiating the amendment because Cheeley "did not want to risk default by [JR Real Estate] and be saddled with a C-2 zoning for 54 acres of land in a mid-block location, as the property would be much less marketable." This evidence creates an inference that could support either conclusion: that Cheeley intended to include the additional $750,000 in earnest money as part of the liquidated damages, or that Cheeley intended it to be a penalty. But we must construe this inference in favor of JR Real Estate as the nonmovant. See *Nat. Svc. Indus., Inc.*, supra, 304 Ga. App. at 100 (all reasonable inferences are viewed in the light most favorable to the nonmovant). And "in cases of doubt the courts favor the construction which holds the stipulated sum to be a penalty, and limits the recovery to the amount of damages actually shown, rather than a liquidation of the damages." (Citation and punctuation omitted.) *Southeastern Land Fund*, supra, 237 Ga. at 231.

Under these circumstances, we cannot say that Cheeley as the movant on summary judgment has shown that there is no genuine issue of material fact concerning whether the additional $750,000 in earnest money was intended to provide for damages rather than a penalty.

(c) Finally, Cheeley was required to show that there is no issue of material fact that the sum stipulated was a reasonable pre-estimate of the probable loss. The record must show evidence that prior to the execution of the agreement, Cheeley "endeavored to estimate damages resulting from a potential breach." *Physician Specialists in Anesthesia, P.C. v. MacNeill*, 246 Ga. App. 398, 401 (539 SE2d 216) (2000). Robert Cheeley averred that in March 2008, before agreeing to the earnest money amount, he consulted with a licensed real estate appraiser. He stated that based upon the data obtained by the appraiser and his own analysis of comparable real estate in the area, he concluded that the property would be worth $20,000 less per acre if it were rezoned and that the probable loss in value would be approximately $1.08 million.

In opposition to Cheeley's affidavit, JR Real Estate presented the affidavit of its own real estate expert, J. Carl Schultz, Jr., who opined that based upon his own comparables as well as Robert Cheeley's, there was insufficient data to conclude that the change in zoning would have an effect on the value of the property. The trial court concluded that Schultz's opinion was not the product of reliable principles and methods because his comparables included sales occurring after the date of the agreement. The court concluded further that Schultz failed to offer his own opinion as to a pre-estimate of the damages.

> The admissibility of evidence on motion for summary judgment, whether contained in affidavits or otherwise, is subject to the rules relating to the admissibility of evidence generally, so that evidence inadmissible on a hearing of the case would generally be inadmissible on motion for summary judgment.

(Citation and punctuation omitted.) *Lance v. Elliott*, 202 Ga. App. 164, 167 (413 SE2d 486) (1991). Schultz averred specifically why many of Cheeley's comparables were not suitable. He stated that (1) some of Cheeley's comparables were for sales in 2006 and 2007, one to two years before the agreement, and that sales closer to the date of the agreement were available, (2) two of the comparables "support a '12% higher premium' on value for multifamily zoning as opposed to commercial zoning on the Property," and (3) in two of the comparables Cheeley made no reference to adjustments for time of sale, zoning, topography, and availability for zoning. Schultz's own comparables reveal some sales occurring within the same month as the original agreement date and some within a month of the last anticipated closing date of November 14, 2008. The trial court therefore erred in rejecting Schultz's affidavit on the ground that his

comparables included sales occurring after the date of the agreement.

The trial court also erred in concluding that Shultz was required to produce his own opinion as to a pre-estimate of damages. As the nonmovant, JR Real Estate was only required to come forward with evidence creating an issue of material fact with regard to Cheeley's claim that $900,000 was a reasonable pre-estimate of Cheeley's damages.[2]

JR Real Estate's expert directly contradicted the conclusion of Cheeley's expert concerning whether the sum of $900,000 was a reasonable pre-estimate of the probable loss. JR Real Estate has therefore pointed to specific evidence giving rise to a triable issue.

Because genuine issues of material fact remain with regard to the second and third prongs of the *Southeastern Land Fund* three-part test, the trial court erred in concluding that Cheeley was entitled to $900,000 in liquidated damages and in granting Cheeley summary judgment on this ground.

2. JR Real Estate's remaining enumerations are rendered moot by our holding in Division 1.

*Judgment reversed. Mikell and Adams, JJ., concur.*

DECIDED MARCH 16, 2011 —
RECONSIDERATION DENIED APRIL 12, 2011.

*Davis, Matthews & Quigley, Matthew R. Thiry*, for appellant.

*Chilivis, Cochran, Larkins & Bever, John K. Larkins, Jr., Koehler & Riddick, Christine A. Koehler, John P. Cheeley*, for appellees.

---

[2] Cheeley contends that this court cannot consider the court's findings and conclusions with regard to Schultz's affidavit, but our review of the court's summary judgment ruling requires a determination of whether the parties submitted competent evidence to support their claims. See *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991) (appellate review of ruling on summary judgment is de novo). See, e.g., *Dierkes v. Crawford Orthodontic Care*, 284 Ga. App. 96, 99 (2) (a), n. 10 (643 SE2d 364) (2007) (even where motion to strike affidavit not ruled upon, appellate court review on summary judgment requires a determination of whether competent evidence supported claim).