**SECOND DIVISION**
**MILLER, P. J.,**
**MERCIER and COOMER, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**June 18, 2020**

# In the Court of Appeals of Georgia

A20A0769. GRAYHAWK HOMES, INC. v. ADDISON.

MILLER, Presiding Judge.

Grayhawk Homes, Inc. seeks review of the trial court's order granting summary judgment in favor of Grayhawk's former employee, Bill Addison, in a dispute about whether Addison violated certain restrictive covenants to which he had agreed during his employment at Grayhawk. On appeal, Grayhawk argues that the trial court erred by granting summary judgment because (1) the liquidated damages provision of the non-compete agreement was enforceable; (2) even if the liquidated damages provision of the agreement was void, it was severable, and so the entire agreement was not void; (3) Grayhawk could still recover actual damages rather than liquidated damages; (4) the liquidated damages provision could be severed under the Restrictive

Covenants Act; and (5) Grayhawk had produced evidence showing that Addison breached the non-compete restrictive covenant.

We conclude that the trial court properly determined that the liquidated damages provision is an unenforceable penalty because Grayhawk failed to pre-estimate its potential damages. We agree with Grayhawk, however, that the liquidated damages provision is severable from the remainder of the agreement and that there is a genuine issue of material fact as to whether Addison breached the non-compete provision. We therefore affirm in part and reverse in part.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

(Citation omitted.) *Crouch v. Bent Tree Community, Inc.*, 310 Ga. App. 319 (713 SE2d 402) (2011).

Grayhawk is a home construction company that is based in Columbus, Georgia. In April 2013, Grayhawk hired Addison as a superintendent. When Addison started his employment with Grayhawk, he signed an "Agreement Not to Compete or Disclose Confidential Information." Among other provisions, the agreement included

2

a non-compete covenant, a non-disclosure covenant, and a non-solicitation of customers covenant. The agreement also contained a liquidated damages clause, specifying that "[i]n the event of [Addison]'s breach of this Agreement, [Grayhawk] shall be entitled to liquidated damages in the amount of [$100,000] plus [$50,000] for each year or any portion thereof that [Addison] was employed by [Grayhawk]." Addison's employment with Grayhawk ceased in October 2014. Upon leaving Grayhawk, Addison started working for America's Home Place, Inc. ("AHP"), where he had worked for eight years before he joined Grayhawk.

In October 2015, Grayhawk filed the instant lawsuit against Addison based on his employment with AHP and raised five claims: (1) breach of the non-compete covenant; (2) breach of the non-disclosure covenant; (3) breach of the non-solicitation of customers covenant; (4) punitive damages; and (5) attorney fees. After discovery, Addison moved for summary judgment on all claims. Following a hearing, the trial court granted Addison's motion for summary judgment. The trial court first concluded that the agreement's liquidated damages provision constituted an unenforceable penalty and was therefore void because there was no evidence that Grayhawk had attempted to estimate its damages before it made the agreement with

3

Addison. The trial court further concluded that the entire agreement was void because it did not contain a severability clause, and therefore all of Grayhawk's claims failed as a result. Alternatively, the trial court concluded that, even if the liquidated damages provision was enforceable, Grayhawk had failed to present evidence showing that Addison had breached the non-compete or non-disclosure provisions because Addison's post-Grayhawk employment with AHP did not constitute work in the "for sale residential construction" business.[1] The trial court further concluded that, because all of the breach of contract claims failed, Grayhawk's claims for punitive damages and attorney fees also failed. This appeal followed.

1. Grayhawk first argues that the trial court erred in concluding that the liquidated damages provision of the restrictive covenant agreement was an unenforceable penalty. We disagree.

> A contractual provision requiring payment of a stipulated sum by one of the parties upon termination or cancellation of the contract will be treated as an enforceable liquidated damages provision rather than an unenforceable penalty only if all three of the following factors are present: First, the injury caused by the breach must be difficult or

---

[1] Grayhawk conceded in its response to Addison's motion for summary judgment that Addison was entitled to summary judgment on its claim for breach of the non-solicitation provision.

impossible of accurate estimation; second, the parties must intend to provide for damages rather than a penalty; and third, the stipulated sum must be a reasonable pre-estimate of the probable loss resulting from such a breach.

(Citation omitted.) *Natl. Svc. Indus., Inc. v. Here to Serve Restaurants, Inc.*, 304 Ga. App. 98, 99-100 (695 SE2d 669) (2010). "[I]n doubtful cases, the courts favor the construction which holds the stipulated sum to be a penalty[.]" (Citation and punctuation omitted.) Id. at 104.

The parties mainly dispute whether the third prong is met, that is, whether the amount of liquidated damages was a reasonable pre-estimate of the probable loss stemming from the breach of the covenant provisions. Grayhawk's president, David Erickson, testified that the $100,000 number in the liquidated damages provision

represents a broad estimate of the damaging effects that somebody could have if they were violating this agreement and disclosing information that would be harmful in various ways and at least put some kind of definitive target on what those damages would be so that if you did get into a court situation you aren't arguing about the merits of the item and then arguing about what it's really worth.

Erickson, however, did not elaborate on how Grayhawk calculated that $100,000 figure or how that number would be related to Grayhawk's losses for the breach of

5

any of the restrictive covenants. See *Caincare, Inc. v. Ellison*, 272 Ga. App. 190, 194 (1) (612 SE2d 47) (2005) (liquidated damages provision was unenforceable in part because "the owner of [the employer] never explained how the parties calculated" the specific amount of damages). Significantly, Erickson only testified that the $100,000 could possibly be related to the damages from the disclosure of information, but the liquidated damages provision applied to all of the restrictive covenants, not just the non-disclosure provision. This is particularly relevant in this case where, as noted in Division 4, below, the only claim currently at issue is Grayhawk's claim for breach of the non-compete agreement, which would present different damages and involve different business interests than a claim for breach of the non-disclosure provision.

Erickson further testified that the same non-compete agreement with the same liquidated damages provision is provided to nearly every Grayhawk employee even though Erickson admitted the damages would not be the same for each employee. See *Daniels v. Johnson*, 191 Ga. App. 70, 72 (1) (381 SE2d 87) (1989) (where designated amount of liquidated damages "would be in some instances too large and in others too small a compensation for the injury occasioned," it "was not shown to have a reasonable pre-determined relation to the contractual damages the [non-breaching party] might suffer.") (citations and punctuation omitted). Erickson also testified that

6

the amount was not negotiated or adjusted for Addison's circumstances. Compare *Joyce's Submarine Sandwiches, Inc. v. California Public Employees' Retirement Sys.*, 195 Ga. App. 748, 750 (2) (395 SE2d 257) (1990) (pre-estimate was reasonable in part when the amount of liquidated damages in a lease was adjusted to the tenant's circumstances). Accordingly, "[w]e think a correct resolution of this issue must be found in the doctrine that 'in cases of doubt the courts favor the construction which holds the stipulated sum to be a penalty, and limits the recovery to the amount of damages actually shown, rather than a liquidation of the damages.'" *Physician Specialists in Anesthesia, P.C. v. MacNeill*, 246 Ga. App. 398, 401 (1) (539 SE2d 216) (2000) (liquidated damages provision was unenforceable when the amount of damages was chosen because it "would be practical, and easy to implement" and the attorneys drafting the provision "thought it would be a just amount," but no evidence was presented that the potential amount of losses was actually estimated).

Grayhawk argues at length that it is Addison's burden to prove that the liquidated damages provision is a penalty and that he did not come forth with his own evidence establishing that the estimation was unreasonable. "At trial the burden is on the defaulting party to show that the provision is a penalty, but this burden does not arise at the summary judgment stage." (Citation omitted.) *JR Real Estate*

*Development, LLC v. Cheeley Investment, L.P.*, 309 Ga. App. 250, 251 (1) (709 SE2d 577) (2011). Instead, "[t]o obtain summary judgment, a defendant need not produce any evidence, but must point to an absence of evidence supporting at least one essential element of the plaintiff's claim." Id. Thus, Addison was entitled to simply point to Grayhawk's lack of evidence that the liquidated damages were pre-estimated. Grayhawk further argues that the amount of the liquidated damages that was set in the agreement is indeed a reasonable estimation of its damages for Addison's alleged breach of the non-compete agreement. "However, the law requires pre-estimation. The record is devoid of evidence that prior to the execution of the Agreement, [Grayhawk] endeavored to estimate damages resulting from a potential breach of the restrictive covenants." *Physician Specialists in Anesthesia, P.C.*, supra, 246 Ga. App. at 401 (1) (liquidated damages provision failed due to the failure to pre-estimate damages even though the amount was reasonable in hindsight). Accordingly, we affirm the trial court's ruling that the liquidated damages provision is unenforceable.

2. Grayhawk next argues that, even if the liquidated damages provision is unenforceable, the trial court erred in voiding the entire agreement instead of severing the void provision from the remainder of the agreement. We agree.

8

The trial court here determined that the contract was not severable because the agreement lacked a severability clause. However, "[t]he intent of the parties determines whether a contract is severable. The parties' intent may be expressed directly, through a severability clause, or indirectly, as when the contract contains promises to do several things based upon multiple considerations." (Citations and punctuation omitted). *Vegesina v. Allied Informatics, Inc.*, 257 Ga. App. 693, 694 (1) (572 SE2d 51) (2002).

> The rule is that where an agreement consists of a single promise, based on a single consideration, if either is illegal, the whole contract is void. But where the agreement is founded on a legal consideration containing a promise to do several things or to refrain from doing several things, and only some of the promises are illegal, the promises which are not illegal will be held to be valid.

(Citations and punctuation omitted). Id.

We conclude that the restrictive covenant agreement is severable. The agreement contained multiple promises on Addison's part to abide by various separate restrictive covenants, and the promise to pay the liquidated damages constituted a separate promise from the promise to follow each of these covenants. *Vegesina*, supra, 257 Ga. App. at 695 (1) ("Vegesina's promise to give 30 days notice

9

prior to terminating his employment with Allied was separate from his promise to pay liquidated damages for failing to give the required notice."). We further note that the liquidated damages provision was written in its own separate section and was not written as part of each of the different restrictive covenants. Compare *SunTrust Bank v. Bickerstaff*, 349 Ga. App. 794, 799-800 (1) (824 SE2d 717) (2019) (class-action waiver was not severable from unenforceable jury trial waiver when the class-action waiver was listed in the same contractual provision as the jury trial waiver and therefore did not constitute its own "distinct part" of the contract). Thus, from the way this contract is written, we conclude that the parties intended the contract to be severable. See *Vegesina*, supra, 257 Ga. App. at 695 (1) (unenforceable liquidated damages provision in an employment contract was severable from the remainder of the contract even though the contract did not contain a severability clause). Accordingly, we conclude that the trial court erred by voiding the entire agreement instead of severing the unenforceable liquidated damages provision.[2]

---

[2] In light of this conclusion, we do not reach Grayhawk's argument that the trial court should have used the "blue pencil" provision of the Restrictive Covenants Act, OCGA § 13-8-53 (d), to sever the liquidated damages provision from the remainder of the agreement.

3. Grayhawk next argues that, in the absence of the liquidated damages provision, it is still entitled to seek actual damages. We agree that, despite the fact that the liquidated damages provision is unenforceable, Grayhawk is still entitled to seek actual damages at trial. See *Daniels*, supra, 191 Ga. App. at 73 (1) (remanding for a new trial on actual damages after a liquidated damages provision was deemed an unenforceable penalty).

4. Grayhawk finally argues that it produced sufficient evidence creating a genuine issue of material fact regarding whether Addison breached the non-compete restrictive covenant. We agree that there is a genuine issue of material fact as to whether Addison's post-Grayhawk employment fell within the scope of the non-compete provision and that the trial court erred in granting summary judgment in this respect.

> The interpretation of a contract is normally a question of law to be resolved by the court, and the orders of the lower court in this case are therefore subject to de novo review. This review requires us first to decide whether the contract provisions at issue are ambiguous. If there is no ambiguity, then we simply enforce the contract according to its terms. Where an ambiguity exists, however, we resolve that ambiguity by applying the statutory rules of construction to ascertain the intent of the parties. Those rules require us to interpret any isolated clauses and provisions of the contract in the context of the agreement as a whole, to

11

construe any ambiguities most strongly against the party who drafted the agreement, and to give the contract a reasonable construction that will uphold the agreement rather than a construction that will render the agreement meaningless and ineffective.

(Citations and punctuation omitted.) *Willesen v. Ernest Communications., Inc.*, 323 Ga. App. 457, 459-460 (1) (746 SE2d 755) (2013).

In construing a contract to ascertain the intent of the parties, the court should give a term or phrase in the contract its ordinary meaning or common signification as defined by dictionaries, because they supply the plain, ordinary, and popular sense unless the words are terms of art. Terms of art or words connected to a particular trade are given the signification attached to them by experts in such art or trade as a rule of construction.

(Citations omitted.) *Kerr-McGee Corp. v. Ga. Cas. & Sur. Co.*, 256 Ga. App. 458, 459 (568 SE2d 484) (2002) (physical precedent only).

As an initial matter, we note that Grayhawk does not challenge the trial court's conclusion that Addison was entitled to summary judgment on its claim for breach of the non-disclosure provision, and so the only claim left at issue is whether Addison breached the non-compete provision. That provision, which was drafted by Grayhawk's attorney, reads as follows:

12

In the event of [Addison]'s termination as an employee with [Grayhawk], [Addison] shall not, for a period of two (2) years from the date of such employment termination, engage in the "for sale" residential construction business as an employee, partner, stockholder, owner, director, officer or in any similar management or supervisory capacity (a) with any such "for-sale" residential construction business located within the Georgia counties of Harris, Muscogee or Troup, or the Alabama counties of Lee or Russell or (b) any "for sale" residential construction business which engages in such "for sale" residential construction business in any of such counties, irrespective of where such business may be located or based.

The determinative question, therefore, is whether Addison "engaged in the 'for sale' residential construction business" as part of his employment with AHP after he left Grayhawk. We first note that the agreement did not define the term "for sale residential construction," and based on the parties' testimony, it appears that the phrase is an industry term of art, which means that we will not turn to a dictionary to define the term, but we will instead turn to the opinion of experts in the field. *Kerr-McGee Corp.,* supra, 256 Ga. App. at 459. Specifically, Erickson testified that the term refers to a specific arrangement where the seller sells both the house and the lot together to the buyer. Erickson however, averred that the term may also cover certain

transactions where the lot and the house are not sold together. Specifically, Erickson averred that a "for sale" residential builder "includes a builder . . . which builds . . . 'build on your own lot homes.'"[3] According to Erickson, "build on your own lot homes," or "spot lot" homes, are where a builder builds a house on land owned by homeowners that is not part of a subdivision or continuing group of lots in a congregated area. Addison testified that his work with AHP involves building "custom" houses on lots already owned by the customer, which potentially falls under the definition proffered by Erickson of a builder who builds "build on your own lot homes," or "spot lot" homes. We therefore conclude that there is a fact issue as to whether Addison is "engag[ing] in the 'for sale' residential construction business," and, thus, whether he breached the non-compete agreement.

---

[3] Addison argues that Erickson's affidavit contradicts his deposition testimony and that the trial court therefore was correct to disregard it. The record does not show, however, that the trial court ever purported to strike or disregard Erickson's affidavit, nor does it show that Addison ever argued this point to the trial court. While there was a hearing on the summary judgment motion where such an argument may have been made, no transcript of that hearing was filed. Accordingly, we cannot affirm on this basis, even under our right-for-any-reason rule. See *Hobbs v. Great Expressions Dental Ctrs. of Ga., P.C.*, 337 Ga. App. 248, 249 n.2 (786 SE2d 897) (2016) ("[E]ven in the context of de novo review, we do not apply the right for any reason rule to uphold an order of the trial court based on a ground not raised below.") (citation omitted).

14

In summary, we affirm the trial court's conclusion that the agreement's liquidated damages provision was unenforceable. We conclude, however, that the liquidated damages provision is severable from the remainder of the agreement and that there is a fact issue as to whether Addison breached the non-compete provision. We therefore affirm the grant of summary judgment in part and reverse it in part.

*Judgment affirmed in part and reversed in part. Mercier and Coomer, JJ., concur.*