**FIRST DIVISION**
**BARNES, P. J.,**
**LAND, J., and WATKINS, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**July 27, 2023**

# In the Court of Appeals of Georgia

A23A0843. CITY OF BROOKHAVEN v. MULTIPLEX, LLC.

LAND, Judge.

In this contract dispute, the City of Brookhaven appeals from the trial court's grant of summary judgment to Multiplex, LLC on the City's claim for liquidated damages. The City argues that the trial court erred in holding that the contract's "delay" clause was not an enforceable liquidated damages provision. We find no error and affirm.

"Summary judgment is appropriate when no genuine issues of material fact remain and the moving party is entitled to judgment as a matter of law. On appeal, we review a trial court's grant of summary judgment de novo, construing the evidence and all inferences drawn from it in a light favorable to the nonmovant." (Citations and

punctuation omitted.) *Stolte v. Hammack*, 311 Ga. App. 710, 710 (716 SE2d 796) (2011).

Viewed in the light most favorable to the City, the record shows that in June 2017, the City negotiated a land swap with the Dekalb County School District for the construction of a new park and elementary school. The project required the demolition of an existing park, and the City did not want the neighborhood to go without a park for an extended period of time. Accordingly, in the "Scope of Work" document outlining the bid requirements for the construction of the new park, the City included a deadline for completion of construction and a damages provision for delays.

Multiplex was the lowest bidder, and the City entered into a contract with Multiplex (the "Contract").[1] In relevant part, the Contract stated that "[t]he services to be performed under this Contract shall commence on the date hereof. The initial term of this Contract shall be through December 31, 2017. Time is of the essence for this Contract. All work must be completed by December 31, 2018."

---

[1] The City also hired an architecture firm to "supervise, manage, and administer" the contract between the City and Multiplex.

The Contract also specifically incorporated several attachments, including the "Scope of Work" addendum.[2] The Scope of Work addendum contained a liquidated damages provision (the "Delay Clause"), which stated that

> [Multiplex] shall have 180 days from the notice to proceed to complete the project. Failure to complete the required construction as specified will result in the assessment of Liquidated Damages at the rate of $1,000.00 per calendar day.

The Contract was signed on June 15, 2017. While a "start date" of June 15 was verbally communicated to Multiplex, it is undisputed that the City did not issue a written notice to proceed.[3] It appears construction began sometime in July. In October 2017, the City held a meeting with Multiplex to address delays in the project.[4] On

---

[2] In contrast to the Contract's deadline for all work to be completed by December 31, 2018, the Scope of Work addendum provided that "[w]ork is expected to begin within 10 days of approval of the contract and all work must be completed within 180 [] calendar days."

[3] "Notice to proceed" is not defined in the contract and the Delay Clause does not specify whether the notice to proceed must be in writing. According to Section 20 of the "General Conditions" addendum, however, "all notices or other writings which the City is required or permitted to give the Service Provider may be hand delivered, mailed via U.S. Certified Mail or sent next-day delivery by a nationally-recognized overnight delivery service . . . ."

[4] According to Section 3.3 of the "General Conditions" addendum, "[t]he City may order [Multiplex] to suspend, delay, or interrupt all or any part of the work . . . for such period of time as he may determine appropriate for the convenience of the

December 1, the City notified Multiplex that it was in breach of the Contract's timeline for completion, extended the completion deadline to December 31, and warned Multiplex that the City would enforce the Contract's Delay Clause if the project was not completed by that date.

The project was not completed by December 31, however, and on January 3, 2018, the City notified Multiplex that it was in breach of the Contract. It is undisputed that the park was substantially completed on September 28, 2018.

In February 2019, the City filed suit against Multiplex, alleging claims of breach of contract, along with interpleader claims against subcontractors of Multiplex, claiming that Multiplex had failed to complete the project and that the City was entitled to liquidated damages in the amount of $271,000.00 for an alleged 271 days of delays. Multiplex answered the complaint and asserted counterclaims, seeking damages due to the City's alleged failure to pay Multiplex for work performed. The City apparently resolved its claims with the third-party interpleader defendants and

---

City. The time for completion of the work shall be extended by the number of days the work is suspended. The City shall not be responsible for any claims, damages or costs stemming from any delay of the work." Multiplex argues that construction was delayed by stop work orders from the City and severe weather.

amended its complaint, leaving only its claims for liquidated damages and attorney's fees.

In November 2021, Multiplex moved for summary judgment on the City's breach of contract claim for liquidated damages. The City filed a cross-motion for summary judgment on its claim for liquidated damages and on all of Multiplex's counterclaims. Following a hearing, the trial court granted summary judgment to Multiplex and denied the City's cross-motion in its entirety. This appeal followed.

In three enumerations of error, the City argues that the trial court erred in finding that the Contract's Delay Clause was an unenforceable penalty. We disagree.

In public works contracts, liquidated damages provisions "are not looked upon with disfavor," *Fortune Bridge Co. v. Dept of Transp.*, 242 Ga. 531, 534 (250 SE2d 401) (1978); rather, "[p]ublic works construction contracts may include both liquidated damages provisions for late construction project completion and incentive provisions for early construction project completion when the project schedule is deemed to have value." OCGA § 36-91-24. OCGA § 13-6-7 further provides that "[i]f the parties agree in their contract what the damages for a breach shall be, they are said to be liquidated and, unless the agreement violates some principle of law, the parties are bound thereby."

"In deciding whether a contract provision is enforceable as liquidated damages, the court makes a tripartite inquiry." *Southeastern Land Fund, Inc. v. Real Est. World, Inc.*, 237 Ga. 227, 228 (227 SE2d 340) (1976). "Specifically, the injury must be difficult to estimate accurately, the parties must intend to provide damages instead of a penalty, and the sum must be a reasonable estimate of the probable loss." (Punctuation and footnote omitted.) *J.P. Carey Enterprises, Inc. v. Cuentas, Inc.*, 361 Ga. App. 383, 388 (1) (864 SE2d 588) (2021). Although "the party who defaults on the contract has the burden of proving the liquidated damages clause is an unenforceable penalty . . . the defaulting party can carry this burden by proving any of the three factors is lacking." (Footnotes and punctuation omitted.) Id. Thus, the determination of "whether a liquidated damages provision is enforceable is a question of law for the court, which necessarily requires the resolution of questions of fact." (Citation omitted.) *JR Real Est. Dev., LLC v. Cheeley Inv., L.P.*, 309 Ga. App. 250, 251 (1) (709 SE2d 577) (2011). "[I]n cases of doubt, the courts favor the construction of a contract which holds the stipulated sum to be a penalty, and limits the recovery to the amount of damage actually shown, rather than a liquidation of the damages." (Citation and punctuation omitted.) *J.P. Carey Enterprises*, 361 Ga. App. at 388 (1).

The City first urges us to conclude that the Delay Clause is enforceable because damages are difficult to estimate in government construction contracts, see *Fortune Bridge Co.*, 242 Ga. at 533-534, and that Multiplex has therefore not satisfied its burden of showing that the Delay Clause was a penalty. Although

> [a]t trial the burden is on the defaulting party to show that the provision is a penalty . . . this burden does not arise at the summary judgment stage. Instead, to obtain summary judgment, [Multiplex] need not produce any evidence, but must point to an absence of evidence supporting at least one essential element of the [City's] claim. (Citation and punctuation omitted.)

*Grayhawk Homes, Inc. v. Addison*, 355 Ga. App. 612, 615 (1) (845 SE2d 356) (2020). It is true that Multiplex does not dispute that damages were difficult to estimate, but Multiplex was entitled to simply point to the City's lack of evidence with regard to the second or third factors. See id.

The City next argues that the parties did not intend the Delay Clause to act as a penalty, and that the court may only look to the language of the contract when making this determination. While it is true that public works construction contracts may include liquidated damages provisions for late construction project completion when timely completion is deemed to have value, see OCGA § 36-91-24, these types

7

of provisions must still satisfy the court's tripartite inquiry, including the requirement that the provision was not intended to be a penalty.

"[W]e ascertain the intent of the parties by first looking to the language of the contract. Although the words used by the parties are not conclusive, they are a significant factor in determining the parties' intent." *Mariner Health Care Mgmt. Co. v. Sovereign Healthcare, LLC*, 306 Ga. App. 873, 876 (703 SE2d 687) (2010). However, "whether a provision represents liquidated damages or a penalty does not depend upon the label the parties place on the payment but rather depends on the effect it was intended to have and whether it was reasonable." *Southeastern Land Fund*, 237 Ga. at 228. "[W]here a designated sum is inserted into a contract for the purpose of deterring one or both of the parties from breaching it, it is a penalty." *Daniels v. Johnson*, 191 Ga. App. 70, 71, 381 S.E.2d 87, 89 (1989).

Here, the Contract provides for " Liquidated Damages at the rate of $1,000.00 per calendar day" in the last paragraph of the Scope of Work addendum. The Contract lacks, however, any language indicating that the liquidated damages were not intended to be a penalty. See *Fuqua Const. Co. v. Pillar Dev., Inc.*, 293 Ga. App. 462, 466 (667 SE2d 633) (2008) (rejecting use of parol evidence where the parties "explicitly agreed" in "unambiguous contract language" that the liquidated damages

8

were not a penalty). Absent such language, the court can look to parol evidence in the record to determine the effect the provision was intended to have. See *J.P. Carey Enterprises*, 361 Ga. App. at 391-392 (1) (b) (looking to "extrinsic evidence" such as emails, documents, and deposition testimony to determine whether the damages provision at issue was a penalty); see also *Gwinnett Clinic, Ltd. v. Boaten*, 340 Ga. App. 598, 602-603 (798 SE2d 110) (2017) ("Shah's testimony also suggested that one purpose of the liquidated damages provision was to deter employees from breaching the agreement").

In its 30 (b) (6) deposition, the City testified that timely construction of the new park was important because the old park would have to be demolished before construction could start on the new elementary school, and residents in the area would have to go to other parks outside of their neighborhood area to recreate if the new park was still under construction. Thus the City agreed that the intent of the delay clause was to "disincentivize delays" with the project "[b]ecause [Multiplex is] going to have to pay $1,000 a day out of their net profits if they don't get the project done on time." Based on this deposition testimony from the City, there is evidence in the record that the Delay Clause was "inserted into a contract for the purpose of deterring

9

one or both of the parties from breaching it, [and] it is a penalty." *Daniels*, 191 Ga. App. at 71.

The Delay Clause also fails because there is no evidence that the $1,000 per day penalty is a reasonable estimate of the probable loss resulting from a delay in construction of the park. "The third prong of the test inquires whether the liquidated damage amount is a reasonable pre-estimate of the probable loss." *J.P. Carey Enterprises*, 361 Ga. App. at 392 (1) (c). "[T]he touchstone question is whether the parties employed a reasonable method under the circumstances to arrive at a sum that reasonably approximates the probable loss." (Citation and punctuation omitted.) Id. "[W]hen the amount of liquidated damages plainly has no reasonable relation to any probable actual damage which may follow a breach, the contractual provision will be construed as an unenforceable penalty." (Citation and punctuation omitted.) Id. The court may look to evidence in the record to determine whether the liquidated damage amount is a reasonable pre-estimate of the probable loss even though the contract uses the words "liquidated damages." See *Gwinnett Clinic, Ltd. v. Boaten*, 340 Ga. App. 598, 601 (798 SE2d 110) (2017) ("The record must show evidence that prior to the execution of the agreement, there was an attempt to estimate damages resulting from a potential breach") (Citation omitted).

The City argues that the Delay Clause should be upheld because the liquidated damages are less than .0004% of the total project cost (over $3 million dollars) for each day of delay, and because the damages "reflect the time-value of performance by a date certain." But "the law requires pre-estimation," and there is no evidence in the record that, prior to execution of the Contract, the City attempted to estimate damages resulting from late completion of construction. *Physician Specialists in Anesthesia v. MacNeill*, 246 Ga. App. 398, 401-402 (1) (539 SE2d 216) (2000) (rejecting "hindsight" estimation of damages where "[t]he record is devoid of evidence that prior to the execution of the Agreement, PSA endeavored to estimate damages resulting from a potential breach of the restrictive covenants"). Compare *Joyce's Submarine Sandwiches, Inc. v. California Pub. Employees Ret. Sys.*, 195 Ga. App. 748, 750 (2) (395 SE2d 257) (1990) (enforcing liquidated damages provision where both the lease and the record showed that "under the circumstances the $50 per day liquidated damages provided in the lease was a reasonable preestimate of the probable loss of percentage rent lost from Joyce's and all the other mall tenants"). In the instant case, the City testified that liquidated damages clauses are "very" common in its construction contracts and that the $1,000 per day number was not project specific, but was instead a "standard" number. Thus, the amount of liquidated

11

damages plainly has no reasonable relation to any probable actual damage which may follow a delayed completion of the project, and the Delay Clause is unenforceable. *J.P. Carey Enterprises*, 361 Ga. App. at 392 (1) (c). See also *Roswell Properties, Inc. v. Salle*, 208 Ga. App. 202, 206 (3) (c) (430 SE2d 404) (1993), abrogated on other grounds by *Golden Peanut Co. v. Bass*, 249 Ga. App. 224 (547 SE2d 637) (2001) (provision for "liquidated damages" was unenforceable where "there is no evidence the [liquidated damages] bore any reasonable relationship to the actual damages which might accrue").

Accordingly, "we think a correct resolution of this issue must be found in the doctrine that in cases of doubt the courts favor the construction which holds the stipulated sum to be a penalty, and limits the recovery to the amount of damages actually shown, rather than a liquidation of the damages." *Physician Specialists in Anesthesia*, 246 Ga. App. at 401-402 (1) (liquidated damages provision was unenforceable when the amount of damages was chosen because it "would be practical, and easy to implement" and the attorneys drafting the provision "thought it would be a just amount," but no evidence was presented that the potential amount of losses was actually estimated). Thus the trial court did not err in granting summary judgment.

12

*Judgment affirmed. Barnes, P. J., and Watkins, J., concur.*